## ORMSBY *v.* U. P. R. Co.

(*Circuit Court, D. Colorado.* November 17, 1880.)

1. RAILROAD—FREIGHT—TRANSPORTATION.—It is the duty of a railroad company engaged as a common carrier, when they receive freight to be transported, to carry it without unnecessary delay.

2. SAME—SAME—SAME.—A delay of 24 hours at a station on the way is an unnecessary delay, unless it is explained and excused by something which the law recognizes as sufficient.

3. SAME—SAME—SAME.—Such delay will not be excused by the fact that the railroad company needed its rolling stock for the purpose of carrying passengers.

4. SAME—CONTRACT—NEGLIGENCE.—It is settled, by repeated decisions of the supreme court of the United States, that a common carrier cannot relieve himself from responsibility for his own negligence, or the negligence of his employes, by any contract that he may enter into with the shipper.

5. SAME—SAME—SAME. — A common carrier may, however, enter into stipulations which do not relieve him in any degree from his responsibility for negligence, if the shipper assents and agrees to them by a special contract, either verbal or in writing.

6. SAME—SAME—SAME.—A contract, therefore, is void in so far as it assumes to say that a railroad company shall not be liable on account of any delay in the transportation of stock.

7. SAME—SAME—SAME.—Such contract is also void in so far as it requires the shipper to give notice of his claim for damages before he unloads the stock.

*Ormsby* v. *Union Pacific Ry. Co., ante,* 170, affirmed.

8. SAME—SAME.—Such contract is valid, however, in so far as it requires that the shipper shall go with the stock and take charge of it, shall take and prepare the car for the use of the stock, and shall see to the loading and unloading of the same.

9. SAME—SAME—NOTICE.—A railroad company cannot exempt itself from any of its obligations as a common carrier by mere notice, or by printing which is appended to or indorsed upon the contract which is executed, but must do it, in so far as it is lawful to do it at all, by a stipulation in the body of the instrument, to which the shipper assents by his signature.

*Railroad Co.* v. *Manuf'g Co.* 16 Wall. 328, 329.

*C. W. Wright,* for plaintiff.

*J. P. Usher* and *H. M. & W. Teller,* for defendant.

McCRARY, C. J., (*charging jury.*) This is a suit in which the plaintiff claims to recover damages from the defendant, the Union Pacific Railway Company, on the ground of negligence in the transportation of a car load of horses.

The plaintiff, in order to recover, must establish two propositions of fact, and of those propositions you are the judges: *First,* that the railroad company was negligent in the matter of delay in transporting plaintiff's horses; *second,* that the result of that negligence was the damage and injury complained of. I will speak to you first only with regard to the plaintiff's case. Presently I will call your attention to the several defences that have been set up by the defendant. You will then in the first place consider whether the plaintiff has made out, *prima facie,* a case upon which he is entitled to recover if the defence is not established—whether the railroad company was guilty of negligence in the matter of delay; because there is no allegation that there was any negligence except in the delay of 24 hours at the station of Brookville, between this and Kansas City. It is the duty of a railroad company, engaged as a common carrier, when they receive freight to be transported, to carry it without unnecessary delay. A delay of 24 hours at a station on the way is an unnecessary delay, unless it is explained and excused by something which the law recognizes as sufficient. The excuse that the company needed its rolling stock for the purpose of carrying passengers is not a sufficient excuse. The duty of

the company is to be prepared to execute its contracts, both to carry passengers and to carry freight; it cannot excuse itself for a failure to do the one upon the ground that it was bound to do the other, and that it was not able to do both. Therefore, if there was nothing in the case except the fact of a delay of 24 hours at this station, and if you should find that that delay was the cause of the injury of which the plaintiff complains, he would be entitled to recover. But it is incumbent upon the plaintiff to show by the preponderance of testimony that the damage to his stock was caused by that delay of 24 hours, and that is the next question for your consideration. You are to consider that question carefully upon the testimony that has been submitted to you, and it is for you to decide whether, in the case of the horses that died, their death was caused by this delay; and, as to the others, whether their sickness and the damage to them was the result of the same cause. In considering this question you will look into the evidence which has been offered before you, tending to show that the injury might have resulted from some other cause; and if you find that it did result from other cause, or, in other words, if you do not find the evidence sufficient to show that it resulted from this delay, you cannot find a verdict for the plaintiff; as, for example, you must consider the condition of the stock when it was shipped at Kansas City, and its condition when it was shipped in Kentucky. If you find that there was anything the matter with the stock, or any of it, before it started from Louisville, that is a fact to be considered, and upon the testimony it is for you to say whether this delay of 24 hours resulted in the death of the two horses, and in the sickness and injury of the others complained of. If you find that the delay was the cause of the injury to the stock, then your verdict will be for the plaintiff, unless you find for the defendant on some of the matters that are alleged by way of defence.

In considering, however, the first question, (whether the damage resulted from this delay,) you are to consider not only the condition of the stock when it was shipped at Louisville, and when it was reshipped at Kansas City, but you are

to consider the manner of the shipment that has been testified to before you—the fact that the horses were put in stalls, that they were crosswise of the car, and that there were 12 of them on the car, and you are to judge whether that manner of shipment would or would not have resulted in this sickness and death and injury of the horses, independently of the delay of 24 hours at Brookville. If you conclude that under all the circumstances the horses would have come through safely, and none of them died, and none of them suffered injury but for that delay, then the plaintiff has made out a *prima facie* case. But if you conclude that even if the horses had not been stopped at Brookville these two would have died, and the others would have been injured and sick, just as they were, then the plaintiff has not made a case, and that is the end of it. But, if upon these questions you find for the plaintiff, you will proceed to consider some of the matters alleged by way of defence; and the only matter that I think I need call your attention to as requiring your consideration, is the allegation of negligence on the part of the plaintiff himself. I say to you, as matter of law, that if the plaintiff was negligent, and if his negligence materially contributed to the injury which he has sustained, then he cannot recover. And in considering this question you will look into the evidence upon the points that I have already called your attention to. As, for example, you will inquire whether it was negligence in him to ship horses in the manner in which he shipped; whether he acted with reasonable and ordinary prudence in that respect, and, if he did not, whether that negligence materially contributed to the results that followed. You will consider whether it was negligence in him to ship the horses in the condition they were in when they left Kansas City; whether prudence required him to delay there, and, under all the circumstances, whether he was negligent in that respect. It is also alleged that he had the option of unloading the horses at Brookville, and that he neglected to avail himself of it. Upon this question there is a conflict of testimony. It is for you to decide what the facts are. If he knew that his train was to remain at Brookville a number of hours, or a day,

and if he had the opportunity to unload the stock and give them rest, and neglected to do it, then it is for you to consider whether that was negligence, and, if so, whether that negligence contributed to the injury which he has sustained; but if he expected that the train would start every half hour, and had reason, from the representations made to him, to expect that, then it is for you to say whether he was, under those circumstances, called upon to attempt to unload his stock.

The defendants have set out, by way of defence, a contract under which they allege that the shipment of this stock was made. The execution of this contract is admitted by the pleadings, and therefore it is before us for consideration. It presents a question which is not without difficulty as a matter of law; at least, it would not be without difficulty in some courts of the country, because there is great conflict of opinion among the courts as to how far a common carrier may release himself from responsbility by a special contract with the shipper. In the courts of the United States, however, the law is well settled, and I am therefore without difficulty in instructing you upon this point. It is settled, by repeated decisions of the supreme court of the United States, that a common carrier cannot relieve himself from responsibility for his own negligence, or the negligence of his employes, by any contract that he may enter into with the shipper. He may, however, enter into stipulations which do not relieve him in any degree from his responsibility for negligence, if the shipper assents and agrees to them by a special contract, either verbal or in writing.

Now, this contract which is before you, in so far as it assumes to say that the railroad company shall not be liable on account of any delay in the transportation of this stock, is void. It is also void according to the decision rendered by Judge Hallett upon demurrer, in so far as it requires the shipper to give notice of his claim before he unloads his stock. That has been settled by that ruling, in which I concur. In so far as it provides that this plaintiff shall go with the stock and take charge of it, shall take a car and prepare the car for

the use of the stock, and shall see to loading and unloading, and all those particulars, I think it is a valid contract; but, as to these particulars, there is no particular conflict in this case. There is appended to this contract a printed statement, which is headed "Rules and regulations for the transportation of live stock," and in that statement there is a provision that in case damages occur in the transportation of live stock, for which the company may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed $200 for a stallion; $100 for a horse; mule, $65; cattle, $50, and other animals, $20. And also another provision, that blooded animals, or animals deemed especially valuable, will be carried only on special contract, and agents are not allowed to receive and ship such animals until a proper contract is made between the owner or consignee and the general freight agent. That, gentlemen, is not in the contract which the plaintiff signed. It is in a print which is on the same sheet of paper with the contract. It has been held by the supreme court of the United States that the shipper is only bound by the stipulation contained in the contract itself; or, in other words, that the railway company that proposes to exempt itself from any of its obligations as a common carrier, cannot do it by mere notice, or by printing which is appended to or indorsed upon the contract which is executed, but must do it, in so far as it is lawful to do it at all, by a stipulation in the body of the instrument, to which the shipper assents by his signature. Upon this subject I charge you in the language of the supreme court in the case of the *R. Co.* v. *Manuf'g Co.*, reported in 16 Wallace's Reports, 328, 329, as follows: "Whether a carrier, when charged upon his common-law responsibility, can discharge himself from it by special contract, assented to by the owner, is not an open question in this court since the cases of *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, and *York Company* v. *Central Railroad*, 3 Wall. 107. In both these cases the right of the carrier to restrict or diminish his liability by special contract, which does not cover losses by negligence or misconduct, received the sanc-

tion of this court. In the former case the effect of a general notice by the carrier seeking to extinguish his peculiar liability was also considered; and, although the remarks of the judge on the point were not necessary to the decision of the case, they furnish a correct exposition of the law on this much-controverted subject. In speaking of the right of the carrier to restrict his obligation by a special agreement, the judge said: It by no means follows that this can be done by an act of his own. The carrier is in the exercise of a sort of public office, from which he should not be permitted to exonerate himself without the assent of the parties concerned. And this is not to be implied or inferred from a general notice to the public limiting his obligation, which may or may not be assented to. He is bound to receive and carry all the goods offered for transportation, subject to all responsibilities incident to his employment, and is liable to an action is case of refusal. If any implication is to be indulged from the delivery of the goods under the general notice, it is as strong that the owner intended to insist upon his rights and the duties of the carrier, as it is that he assented to their qualification. The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment.' " And there is more in the same opinion to the same effect, which it is not necessary for me to read.

I say to you, gentlemen, so far as anything contained in the rules and regulations for the transportation of live stock, printed at the head of this contract, is concerned, it is not a part of the contract with this plaintiff.

Upon the question of damages in this case, in the event you shall find for the plaintiff, (of course, if you find that the delay did not cause the injury, that is the end of the case, and you find for the defendant. If you find that the plaintiff himself was negligent, that his negligence contributed materially to the loss which he has sustained, that is the end of the case;) but, if upon these questions you find for plaintiff, you will then consider the question of damages. In this part of the case you are the judges, but you must consider it carefully.

There is no subject coming before courts upon which there is so much extravagant testimony; it is very largely a question of opinion. You must consider all the evidence and all the circumstances, and arrive at a just and reasonable determination. It is not what a man might have made if the horse had not died, by using him as a racer upon the track, that is the test of his damages. The rule is this: that he is entitled to recover the reasonable market value in cash at the place where the loss occurred; that is to say, what the two horses that died could reasonably have been sold for in this market at that time in cash. Of course, such a question is always subject to more or less uncertainty; one man will estimate it at more than another, and the jury is simply to make use of their common sense, and apply the testimony and all the circumstances, and arrive at a fair and just estimate.

As to the horses that did not die, the damages would be simply the actual loss—the actual damage which the plaintiff sustained by reason of the injuries, the sickness which resulted from the negligence, if there was negligence, of the defendant. In ascertaining the value of these animals you are to look into all the circumstances; to consider the age of the horses that died. You are to consider their breeding, of course, the purposes for which they might be used, and everything that goes into the question of their market value in this market. As to this old horse, there is a claim here, and some evidence tending to show, that he was diseased before he left Kentucky, and that is a subject for your consideration. If that be true, it of course affects the value of the animal. It is for you to say whether that is true or not.

I have not gone over the suggestions of counsel, but I think that I have covered everything that is necessary. If there is any suggestion to be made I will hear it.

Verdict for plaintiff for $750.