CHICAGO, R. I. & P. R. Co. v. W. H. WITTY.

[FILED JUNE 30, 1891.]

Common Carriers: CANNOT LIMIT LIABILITY FOR NEGLIGENCE.
   A common carrier of live stock, cannot, by contract with a shipper, relieve itself, either in whole or in part, from liability for injury or loss resulting from its own negligence.

ERROR to the district court for Jefferson county. Tried below before MORRIS, J.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error, cited, contending that a limitation of liability was valid, even where the carrier was negligent: 1 Lawson, Cont. of Carriers, ch. 5; *Hart v. R. Co.*, 2 McCreary [U. S.], 333; *Hart v. R. Co.* 112 U. S., 338; *St. L., I. M. & S. R. Co. v. Weakly*, 8 S. W. Rep. [Ark.], 134; *Harvey v. R. Co.*, 74 Mo., 538; *Graves v. R. Co.*, 137 Mass., 33; *Squire v. R. Co.*, 98 Id., 239; *L. & N. R. Co. v. Sherrod*, 35 Am. & Eng. R. Cases, 611; *Durgin v. Am. Exp. Co.*, 20 Atl. Rep. [N. H.], 328.

*Letton & Hinshaw*, contra, cited, contending that the limitation was void: *Railroad Co. v. Lockwood*, 17 Wall. [U. S.], 357; *Liverpool Steam Co. v. Ins. Co.*, 129 U. S., 397; *McFadden v. M. P. R. Co.*, 92 Mo., 343 [1 Am. St. Rep., 721]; *M. P. R. Co. v. Fagan*, 13 Am. St. Rep. [Tex.], 776, and notes]; *Cream City R. Co. v. C., M. & St. P. R. Co.*, 63 Wis., 93, and cases; Hutchinson, Carriers, 226, and cases.

NORVAL, J.

The defendant in error shipped a stallion over the railway of the plaintiff in error from Henry, Illinois, to Jansen, Nebraska. The horse died shortly after reaching the place of destination, by reason of injuries received in transportation, as is claimed, caused by defendant's negligence. The action is for the recovery of the value of the animal. There was a trial by jury, and a verdict and judgment for plaintiff for $400. Defendant prosecutes error.

The petition alleges, in substance, that on the 31st day of October, 1888, at Henry, Illinois, the plaintiff delivered to the defendant, as common carrier for hire, a certain

stallion of the value of $1,800, to be transported over its railway to Jansen, in this state; that the defendant undertook to do so for the stipulated sum of $30, which was then and there paid by plaintiff to the defendant; that the defendant did not safely convey and deliver said stallion as it had undertaken to do, but on the contrary conducted itself so carelessly and negligently, in and about conveying and transporting the same, that said stallion was severely hurt, bruised, and injured, to such an extent that it died from the effects of said injuries on the same day it arrived at Jansen; and that said injuries were caused by the gross negligence of the defendant in and about the operation of its train, of which the car containing said horse formed a part.

The defendant's answer admits the receipt and transportation of the animal as stated in the petition; denies all allegations of negligence; sets up that the stallion was received by the defendant for transportation under a contract in writing, made by it with the plaintiff, whereby in consideration of a reduction of the freight on said animal from $54 to $27, it was agreed the liability of the defendant for damages to said animal should not exceed $100, and that the regular charges for the transportation of a stallion over defendant's road from Henry to Jansen was $54, when the animal was of greater value than $100, except in cases where by agreement with the owner the liability of the company for damages to such animal was limited to $100, and the owner assumed the risks as provided in the written contract in this case.

The answer also denies that the horse was injured in transportation, or that it died from the effects of such injuries, and alleges that the immediate cause of his death was pneumonia. The value of the animal was put in issue by the answer.

The plaintiff in his reply alleges that $30 was the only sum of money demanded of plaintiff, or mentioned to him as being the regular rate of freight for the carriage of such

horse, and that plaintiff was not informed and had no knowledge that said sum was not the full, regular rate of charge for such carriage.

The second paragraph of the reply is as follows:

"Plaintiff avers no consideration was ever received by him for the signing of a certain paper or papers presented to him by the agent of defendant at Henry for signature; denies that any reduction of freight rates was ever made to him; denies that he ever entered into any contract or agreement to release the defendant from liability as a common carrier for the safe delivery of said stallion, and avers that if the papers he signed contained any such pretended contracts or agreement, plaintiff had no knowledge of the same, and was ignorant that any such release, contract, or agreement was ever signed by him. Plaintiff further says that any such release and agreement, if any there be as alleged, is without consideration, and null and void, and is against public policy, and contrary to law, and inoperative to release said defendant."

The proof shows beyond controversy that the horse was sound and in good condition when he was placed in the car at Henry, and that when the car reached Jansen, the horse was severely bruised and injured, from the effects of which he died shortly after being unloaded. The evidence tends to show that the bruises and injuries were caused by the careless, negligent, and violent manner in which the defendant handled the car in which the horse was being transported. Indeed, it is not contended by the plaintiff in error that the evidence on the question of its negligence in operating and handling its cars was not ample to sustain the verdict of the jury.

The sole ground on which we are asked to reverse the case is the alleged error of the court. in its refusal to give to the jury the following instruction asked by the plaintiff in error:

"3. The court instructs the jury that under the law and

evidence in this case, plaintiff cannot, in any event, recover any sum exceeding one hundred dollars, with seven per cent interest thereon from the third day of November, 1888.''

Whether this request should have been given depends upon whether the written contract for the transportation of the horse, pleaded in the answer and introduced on the trial, is valid and binding.

The following is a copy of the contract referred to:

Form 8.

# Chicago, Rock Island & Pacific Railway Company

## LIVE STOCK CONTRACT.

*Live Stock in quantities LESS THAN A FULL CAR LOAD will be charged for on basis of estimated weights as per current Classification.*

Live Stock in car loads or less will not be taken unless this contract, under which the Company assumes no responsibility for loss, damage, or delay to the Stock, is executed by the Station Agent and Shipper.

Agents are not allowed to receive and ship such live stock until a proper contract or release is signed by the owner or shipper thereof.

Two or three cars of stock will entitle the owner or his agent to pass on the train with the stock to take care of it; four to seven cars, inclusive, belonging to one owner, two men in charge; and eight cars or more, three men in charge, which is the maximum number that will be passed by one owner. ONE CAR OF HORSES OR MULES WILL ENTITLE THE OWNER OR DRIVER TO PASS ON THE TRAIN WITH THE STOCK TO TAKE CARE OF IT, BUT WILL NOT ENTITLE HIM TO RETURN PASS. PARTIES SO PASSED MUST ACCOMPANY THE STOCK.

The agent at the station where the stock is loaded will give no passes, but the name or names of the persons who are ACTUALLY entitled to pass free, with the stock, must be entered on the back of the contract, which, when certified to by the Agent, is the authority for the conductor to pass them.

Agents will permit only the names of the owners or bona fide employes who accompany the stock to be entered on the back of the contract, without regard to passes allowed by number of cars.

DIFFERENT KINDS OF LIVE STOCK MUST NOT BE LOADED IN THE SAME CAR.

Agents of this Company are not authorized to agree to forward Live Stock to be delivered at any specified time.

C., R. I. & P. R. Co. v. Witty.

| No. of Way-bill. | No. of Car. |
|---|---|
| S 1 | 4314 C K & N |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

*Henry* Station.

This contract, made and entered into this *31st* day of *Oct.*, A. D., 188*8*, by and between *W. H. Witty*, of....................and the CHICAGO, ROCK
Shipper's residence.
ISLAND AND PACIFIC RAILWAY COMPANY, WITNESSETH, that for and in consideration of rate named (*Tariff* dollars per car) and privileges above enumerated, the said *W. H. Witty* agrees to ship *One Stallion* cars of.............. from *Henry* to *Jansen, Neb.*, and said Railway Company agrees to receive and haul the same.

Which stock is to be loaded and unloaded, watered and fed, by the said *W. H. Witty* or his agents.

And, in consideration of free transportation for ...............persons, hereby given by said Railway Company, such persons to accompany the stock, it is agreed that the cars containing the stock of said *W. H. Witty*, are in the sole charge of such person or his agents for the purpose of attention and protection to the stock while in transit, and the Company assumes no responsibility for safety to stock in charge of the shipper or his agents, whether from theft, heat, jumping from car, injury in loading or unloading, injury or damage which stock may do to themselves or which may arise from the reasonable delay of trains, or from any other cause or accident or injury, except those occurring by reason of gross negligence of the Company.

It is also agreed in all cases that the liability of the Company for damage to valuable or common live stock shall not exceed one hundred dollars for each animal, except by special agreement. And further, that the persons who receive free transportation in charge of said stock, in consideration of the receipt of the same, agree to assume all risk of personal injury from any cause whatever, except injuries arising from gross carelessness of the Railway Company.

It is also agreed that the said Railway Company receives live stock only subject to owner's risk for delays, damages, or losses which may be caused

by enforcing quarantine regulations established by the authorities of the several States, Territories, or District through or into which they are to be transported; and all expenses, damages, and losses which shall be incurred because of such regulations shall be borne by the owner.

It is also agreed that no stop-over privileges will be granted on return passes.

WITNESS, the name of the Railway Company by its duly authorized agent, and signature of the shipper hereto, the day and year first above written.

CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY.

C. H. MOSS, Agent.

W. H. WITTY, Shipper.                                    M.

[Printed across the face in red ink: "Read this contract." "Duplicate."]

While the plaintiff neither admits, nor denies directly, the execution of the above contract in his reply the allegations of the second paragraph thereof are in effect an admission that the plaintiff signed the agreement. (*Dinsmore & Co. v. Stimbert*, 12 Neb., 443.)

But outside of and independent of the admission of the pleading, the execution of the contract is proved by evidence that is undisputed. C. H. Moss, who was the defendant's agent at Henry, Illinois, when the horse was delivered to the company for shipment, testifies that the contract was prepared in duplicate and signed by the plaintiff, and by the witness on behalf of the company at that time, each retaining one of the duplicates. This testimony is in no manner denied.

The execution of the agreement being established, the question then arises, is the clause therein, limiting the liability of the company to an amount not exceeding $100, valid and binding, when the loss was occasioned by the negligence of the carrier?

The contract in the case at bar was entered into in the state of Illinois, and was to be performed within the states of Illinois, Iowa, Missouri, and Nebraska. In passing

upon its validity, we shall not take into consideration the provisions of the constitution and laws of this state, which relate to the limitation of the liability of railroad companies as common carriers; nor do we determine whether the provisions of our constitution and statutes apply to such a contract. As we view it, the stipulation in the contract, limiting the liability of the plaintiff in error, for its own negligence, is invalid under the rule of the common law.

With certain well defined exceptions, a carrier of live stock is an insurer, not only of the safety of the property while being transported, but for its safe delivery to the owner at the place of destination. The law does not hold it liable for injuries resulting unavoidably from the inherent nature and propensities of the animals transported, nor for damages occasioned from the act of God or the violence of public enemies. We do not doubt that a carrier may, by contract fairly entered into, limit in some respect its liability as an insurer, or its common law liability, where the restriction imposed is reasonable. But, on grounds of public policy, the law has wisely prohibited a common carrier of freight from in any manner contracting against its own negligence. This doctrine was distinctly held and applied in *A. & N. R. Co. v. Washburn*, 5 Neb., 117. GANTT, J., in the opinion says : "The common law fixes the degree of care and diligence due from railroad companies as common carriers; and a failure to exercise this care and diligence is negligence, without any legal distinction as being gross or ordinary ; and the better rule of law, sustained by the weight of authority, is, that it is against the policy of the law to allow stipulations which will relieve the company from the exercise of that care and diligence, or which, in other words, will excuse them for negligence in the performance of that duty."

Decisions are to be found which lay down a contrary doctrine, but the better reason, as well as the current of au-

thority in this country, sustain the rule announced by this court in the case referred to. (See *Railroad Co. v. Lockwood*, 17 Wall. [U. S.], 357; *Grand Trunk R. Co. v. Stevens*, 95 U. S., 655; *Bank of Kentucky v. Adams Exp. Co.*, 93 Id., 174; *Liverpool Steam Co. v. Phenix Ins. Co.*, 129 Id., 397; *Shriver v. Sioux City & St. P. R. Co.*, 24 Minn., 506; *Welsh v. P. & C. R. Co.*, 10 O. St., 65; *L. C. & L. R. Co. v. Hedger*, 9 Bush [Ky.], 645; *McCune v. B. C. R. & N. R. Co.*, 52 Ia., 600; *Ortt v. M. & St. L. Ry. Co.*, 36 Minn., 396; *Ormsby v. U. P. Ry. Co.*, 4 Fed. Rep. [Col.], 706; *Rintoul v. N. Y. C. & H. R. R. Co*, 17 Id., 905; *East Tenn. V. & G. R. Co., v. Johnston*, 75 Ala., 596; *Kiff v. A. T. & S. F. R. Co.*, 4 Pac. Rep. [Kan.], 401; *I. C. R. Co. v. Morrison*, 19 Ill., 136; *I. C. R. Co. v. Adams*, 42 Id., 486; *Farnham v. C. & A. Ry. Co.*, 55 Pa. St., 53; *Durgin v. Am. Exp. Co.*, 20 Atl. Rep. [N. H.], 328; *Adams Exp. Co. v. Holmes*, 9 Id. [Pa.], 166; *Morrison v. Construction Co.*, 44 Wis., 405; *Black v. Goodrich Transp. Co.*, 55 Id., 319; *Railroad Co. v. Wilcox*, 84 Ill., 239.)

The recovery in this case is placed solely upon the ground of the negligence of the plaintiff in error in handling of its cars. As the stipulation in the contract, under which the horse in question was shipped, relieved the carrier from all liability for damages, excepting those which should result from its own gross negligence, such provision is contrary to sound public policy, and is therefore void.

It is claimed that the limitation in the contract, as to the amount of damages in case of loss or injury, does not tend to exempt the carrier from liability for negligence. The authorities cited in brief of plaintiff in error so hold, but we are unable to draw such a distinction. If a carrier cannot, by stipulation, be relieved from liability for its negligence, it is equally clear, for the same reason, that it cannot, by contract with the shipper, limit the amount of damages resulting from such negligence. If the plaintiff in error can lawfully stipulate that the damages shall not

exceed $100, it could likewise contract that it should not be more than $25, or any smaller sum, thereby practically relieving itself from all responsibility for injuries occasioned by its own negligence. That would be accomplished indirectly, what it could not lawfully do directly. The proof fully shows that the horse, when shipped was worth not less than $400, and to hold that the owner can only recover one-fourth that sum, would be to exempt the carrier from a part of the liability assumed by it for injuries resulting from its own carelessness or negligence. This the law will not sanction. (*Morrison v. Construction Co.*, 44 Wis., 405; *Black v. Goodrich Trans. Co.*, 55 Id., 319; *K. C., St. J. & C. B. R. Co. v. Simpson*, 30 Kan., 645; *Express Co. v. Moon*, 39 Miss., 822; *C., St. L. & N. O. R. Co. v. Abels*, 60 Id., 1017; *U. S. Exp. Co. v. Backman*, 28 O. St., 144; *Moulton v. St. P. R. Co.*, 31 Minn., 85; *Boehl v. C., M. & St. P. Ry. Co.*, 46 N. W. Rep. [Minn.], 333; *Adams Exp. Co. v. Stettaners*, 61 Ill., 184; *Oppenheimer & Co. v. Express Co.*, 69 Id., 62; *Grogan v. Adams Exp. Co.*, 7 Atl. Rep. [Pa.], 134.)

The evidence shows that the plaintiff in error had two rates for the transportation of stallions from Henry to Jansen. The rate was $54 per head when the carrier bound itself to pay the full damages sustained by the shipper, and the sum of $27 was charged when the carrier stipulated its liability should not exceed $100 per head. In the case we are considering the horse was shipped under the cheaper rate. Doubtless carriers have the right to fix their charges for transportation according to the value of the property to be carried, and where, by a contract fairly made between carrier and shipper, the latter obtains a reduced rate by reasons thereof, the value thus agreed upon will be the limit of the carrier's liability, except where the damages are the result of its own negligence. In other words, a carrier may, by stipulation, limit its responsibility in respect to any unavoidable injury or loss, but not from liability for

damages caused from its own negligence.  This rule is but fair and just, and violates no principle of public policy.

The instruction requested was therefore properly refused.  The judgment is

AFFIRMED.

THE other judges concur.