CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. J. A. GARDINER ET AL.

FILED MARCH 17, 1897. No. 7056.

1. Instructions: HARMLESS ERROR. An instruction which, though technically inaccurate in some respects, nevertheless correctly states the principles really involved, *held* not prejudicially erroneous.

2. Carriers: SHIPPING CONTRACTS: LIMITATION OF LIABILITY. A limitation of the liability of a common carrier contained in a shipping contract will not be recognized or enforced in this state, though valid in the state where made, when such attempted restriction of liability is illegal and contrary to the public policy of this state.

ERROR from the district court of Adams county. Tried below before BEALL, J. *Affirmed.*

The opinion contains a statement of the case.

*A. W. Agee, J. W. Deweese,* and *F. E. Bishop,* for plaintiff in error:

The contract is valid under the laws of Illinois, where it was made, and is. enforceable in this state. (*Hazel v. Chicago, M. & St. P. R. Co.,* 48 N. W. Rep. [Ia.], 926; *Fairchild v. Philadelphia, W. & B. R. Co.,* 24 Atl. Rep. [Pa.], 79; *Chicago & N. W. R. Co. v. Chapman,* 30 Ill. App., 504; *Black v. Wabash, St. L. & P. R. Co.,* 111 Ill., 350; *Wendall v. Osborne,* 18 N. W. Rep. [Ia.], 709; *German Ins. Co. v. Davis,* 40 Neb., 701.)

The provision of the contract limiting the liability of the carrier to the agreed value of the horse is valid and binding. (*Hart v. Pennsylvania R. Co.,* 112 U. S., 331; *Pacific Express Co. v. Foley,* 26 Pac. Rep. [Kan.], 665; *Coupland v. Housatonic R. Co.,* 23 Atl. Rep. [Conn.], 870; *Ballou v. Earle,* 22 Atl. Rep. [R. I.], 1113; *Boorman v. American Express Co.,* 21 Wis., 154; *Abrams v. Milwaukee, L. S. & W. R. Co.,* 58 N. W. Rep. [Wis.], 780; *Starnes v. Louisville & N. R. Co.,* 19 S. W. Rep. [Tenn.], 675; *Louisville & N. R. Co. v. Wynn,* 14 S. W. Rep. [Tenn.], 311; *Zouch v. Chesapeake & O. R. Co.,* 15 S. E. Rep. [W. Va.], 185; *Durgin v. American Express Co.,* 20 Atl. Rep. [N. H.], 328; *Moulton v. St. Paul, M. & M. R. Co.,* 31 Minn., 85; *Hutchinson v. Chicago, St. P., M. & O. R. Co.,* 35 N. W. Rep. [Minn.], 433; *Louisville & N. R. Co. v. Sherrod,* 4 So. Rep. [Ala.], 29; *Johnstone v. Richmond & D. R. Co.,* 17 S. E. Rep. [S. Car.], 512; *Zimmer v. New York C. & H. R. R. Co.,* 33 N. E. Rep. [N. Y.], 642; *Richmond & D. R. Co. v. Payne,* 10 S. E. Rep. [Va.], 749; *Harvey v. Terre Haute & I. R. Co.,* 74 Mo., 538; *Brehme v. Adams Express Co.,* 25 Md., 329; *Baltimore & O. S. W. R. Co. v. Ragdale,* 42 N. E. Rep. [Ind.], 1106; *Hill v. Boston, H. T. & W. R. R. Co.,* 10 N. E. Rep. [Mass.], 836; *Smith v. American Express Co.,* 66 N. W. Rep. [Mich.], 479; *Albers v. Western Union Telegraph Co.,* 66 N. W. Rep. [Ia.], 1040.)

The provision requiring notice of damage to be given to the carrier within ten days is binding. (*Sherrill v.*

*Western Union Telegraph Co.*, 109 N. Car., 527; *Young v. Western Union Telegraph Co.*, 65 N. Y., 165; *Massengale v. Western Union Telegraph Co.*, 17 Mo., App., 259; *Gulf, C. & S. F. R. Co. v. Frawick*, 68 Tex., 314; *Chicago & A. R. Co. v. Simms*, 18 Ill. App., 68; *Black v. Wabash, St. L. & P. R. Co.*, 111 Ill., 351; *Southern Express Co. v. Caldwell*, 21 Wall. [U. S.], 264; *Hart v. Western Union Telegraph Co.*, 6 Pac. Rep. [Cal.], 637; *Heimann v. Western Union Telegraph Co.*, 57 Wis., 564; *Goggin v. Kansas P. R. Co.*, 12 Kan., 416; *Western Union Telegraph Co. v. Meredith*, 95 Ind., 93; *Cole v. Western Union Telegraph Co.*, 33 Minn., 227; *Hill v. Western Union Telegraph Co.*, 85 Ga., 425; *Western Union Telegraph Co. v. Dunfield*, 11 Colo., 335; *Weir v. The Express Co.*, 5 Phila. [Pa.], 355; *Sprague v. Missouri P. R. Co.*, 34 Kan., 347; *Rice v. Kansas P. R. Co.*, 63 Mo., 314; *Western Union Telegraph Co. v. James*, 16 S. E. Rep. [Ga.], 83; *Western Union Telegraph Co. v. Phillips*, 21 S. W. Rep. [Tex.], 638; *Armstrong v. Chicago, M. & St. P. R. Co.*, 54 N. W. Rep. [Minn.], 1059; *Gulf, C. & S. F. R. Co. v. Wright*, 21 S. W. Rep. [Tex.], 80; *Western Union Telegraph Co. v. Dougherty*, 15 S. W. Rep. [Ark.], 468; *Beasley v. Western Union Telegraph Co.*, 39 Fed. Rep., 181; *Western Union Telegraph Co. v. Yopst*, 20 N. E. Rep. [Ind.], 222.)

The shipment of live stock is peculiarly a matter of contract fixing the terms, rates, and liabilities, in absence of express statute. The contract is not immoral, criminal, or in violation of any rule of public policy which should deny its being effective. (*Griswold v. Illinois C. R. Co.*, 57 N. W. Rep. [Ia.], 843; *Coupland v. Housatonic R. Co.*, 61 Conn., 531; *Black v. Chicago, B. & Q. R. Co.*, 30 Neb., 197; *Heller v. Chicago & G. T. R. Co.*, 3 Am. & Eng. R. Cas., n. s. [Mich.], 602; *Hart v. Pennsylvania R. Co.*, 18 Am. & Eng. R. Cas. [U. S.], 608; *Sharer v. Pennsylvania Co.*, 71 Fed. Rep., 937; *State v. Julow*, 31 S. W. Rep. [Mo.], 781; *Forepaugh v. Delaware, L. & W. R. Co.*, 40 Am. & Eng. R. Cas. [Pa.], 78; *Western & A. R. Co. v. Exposition Cotton Mills Co.*, 35 Am. & Eng. R. Cas. [Ga.], 603; *Fonseca v. Cunard Steamship Co.*, 27 N. E. Rep. [Mass.], 665; *O'Regan v. Cunard Steamship Co.*, 160 Mass., 356.)

The contract is valid in Illinois and should be held valid in Nebraska. (*Liverpool & Great Western Steam Co. v. Phenix Ins. Co.*, 129 U. S., 397; *Heller v. Chicago G. T. R. Co.*, 3 Am. & Eng. R. Cas., n. s. [Mich.], 599; *Hart v. Pennsylvania R. Co.*, 112 U. S., 331; *Ryan v. Missouri P. R. Co.*, 23 Am. & Eng. R. Cas. [Tex.], 706; *Grand v. Livingston*, 38 N. Y. Sup., 490; *Fairchild v. Philadelphia, W. & B. R. Co.*,. 24 Atl. Rep. [Pa.], 79; *Hazel v. Chicago, M. & St. P. R. Co.*, 82 Ia., 477; *Pennsylvania R. Co. v. Fairchild*, 69 Ill., 260; *Texas & P. R. Co. v. Davis*, 2 Tex. App., 156; *Hartmann v. Louisville & N. R. Co.*, 39 Mo. App., 88; *Gibson v. Connecticut Fire Ins. Co.*, 77 Fed. Rep., 565; *The Majestic*, 60 Fed. Rep., 627; *Wupperman v. The Carib Prince*, 63 Fed. Rep., 267; *Otis Co. v. Missouri P. R. Co.*, 112 Mo., 622; *Merchants Dispatch Co. v. Furthman*, 61 Am. & Eng. R. Cas. [Ill.], 145; *International & G. N. R. Co. v. Moody*, 35 Am. & Eng. R. Cas. [Tex.], 607; *Meuer v. Chicago, M. & St. P. R. Co.*, 2 Am. & Eng. R. Cas., n. s. [S. Dak.], 493.)

*J. A. Gardiner* and *J. B. Cessna, contra.*

RYAN, C.

This action was brought in the district court of Adams county for the value of a horse alleged to have been injured so as to have been rendered worthless on the line of railway of plaintiff in error while in transit between Peoria, Illinois, and Hastings, in this state. There was a verdict against the railroad company in the sum of $650. To reverse the judgment thereon rendered the railroad company has prosecuted this proceeding in error.

The matters in defense will now be separately considered. The contract of shipment provided that in cases where no rate was expressly inserted therein the value of each horse was agreed to be $100, and in this connection was the following language: "And that the above rate of transportation is based upon the agreement that in case of loss or damage, whether resulting from accident or negligence of said railroad company or its servants, said

railroad company does not assume a liability for such loss or damage to exceed the valuation of each animal." There was a further provision that in case of damage sustained, a written claim therefor, verified by affidavit, should be presented to the railroad company's general freight agent at Chicago or to the station agent, in this instance at Hastings, within ten days after the removal of the animal from the car in which it had been shipped. There was evidence of an oral notice of the character above indicated, within the time fixed, to the local agent at Hastings, through whose procurement an examination was at once made of the condition of the horse, and thereupon immediate steps were taken by the railroad company for the relief of the injuries which the horse had sustained. It was not shown that if there had been a technical compliance with the terms above prescribed there would have been taken any other steps than those which were taken. Under these circumstances we do not think that the failure to give a written notice, based upon an affidavit, was an indispensable condition precedent to a right of recovery. (*Wabash R. Co. v. Brown*, 39 N. E. Rep. [Ill.], 273.)

Plaintiff in error contended by its answer in the district court, as it does in argument in this court, that by the decisions of the courts of Illinois, introduced in evidence, the restriction of the liability of a common carrier to the value fixed in the contract of shipment was enforceable in that state, and consequently should be enforced in this state. In *Chicago, R. I. & P. R. Co. v. Witty*, 32 Neb., 275, there was under consideration very much the same circumstances as are now under consideration, except that there was in that case no averment or proof as to the law of Illinois being different from that of Nebraska with respect to the right of a common carrier, by contract, to limit its liability for negligence. It was held that no such restriction could be made under the laws of this state, and this ruling has been followed and approved in *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb., 356.

The question now presented is whether or not our conclu-
sion thus announced should be held to be subject to a
modification on account of the alleged difference between
the laws of Illinois and those of Nebraska.   The defend-
ant in error, to show that there is no difference between
the holding of the courts of Illinois and the holding of
this court in *Chicago, R. I. & P. R. Co. v. Witty, supra,* in
the respect indicated, offered in evidence, among other
language of the appellate court of Illinois, that found on
page 523 of the case of *Chicago & N. W. R. Co. v. Chapman,*
30 App. Ct. Rep.   From this language offered in evidence
we quote the following: "We hold that while common
carriers cannot, under the law, be permitted to fix, arbi-
trarily, the prices on freight they ship at prices below
the real value, without the full, free, and voluntary con-
sent of the shipper, fairly and understandingly entered
into, and with the purpose of fixing its value, yet we also
hold that common carriers have a lawful right to demand
and require of the shipper a correct and honest statement
of the actual value of his merchandise, and to insert such
value in the bill of lading, and then to charge the shipper
a just and reasonable compensation in proportion to the
risk they assume in transporting his property.   By such
value when so fixed the shipper should be bound in case
of loss or injury to his property, although the carrier
might show the property to be of less value than stated
by the shipper.   Such a rule would be reasonable and
just to both parties.   There is no hardship in the law
requiring common carriers to demand a correct and truth-
ful statement from shippers of the real value of their
property; nor is there any hardship or injustice in requir-
ing the shipper to pay a full and fair compensation to
have his merchandise shipped, in proportion to its value."
The defendant in error also offered in evidence page 418
of the case of *Chicago & N. W. R. Co. v. Chapman,* 24 N. E.
Rep., which we take to be the same case decided by the
appellate court, from the opinion in which the above quo-
tation was made.   On the page of the North Eastern

Reporter offered in evidence we find this language of the supreme court of Illinois: "By the strict rule of the common law the carrier was liable for injuries resulting from causes beyond his control, and which were not the result of his act or the omission of his duty; the exception being that he was not liable for injury or loss resulting from the act of God or the public enemy. Thus, he must account for goods received for transportation even though they be destroyed by fire without his fault. The rule has generally been so far relaxed that the carrier may, by special contract, exempt himself from this strict liability imposed by the common law, but the weight of authority, in our judgment, holds, as this court has uniformly held, that he may not exempt himself from liability for damages resulting from the gross negligence or willful misconduct of himself or of his servants. The law does not authorize common carriers to fix arbitrarily the value of goods delivered to them for transportation, and thereby limit their liability in case of loss. If a value should be fixed by the carrier as before stated, and the contract of shipment was based thereon, the amount thus fixed would ordinarily fix the liability of the carrier." The syllabus of the case from which the above quotation was made was introduced in evidence. It was as follows: "A common carrier cannot, by contract, limit its liability for injury to property during transportation, caused by its gross negligence." Section 4, article 11, entitled "Railroad Corporations," in our constitution contains this language: "The liability of railroad corporations as common carriers shall never be limited." In this state, therefore, the liability of railroad corporations is that of common carriers, which may not be limited by the courts or by the legislature. A comparison of the language above quoted as having been introduced in evidence in this case with that of NORVAL, J., in *Chicago, R. I. & P. R. Co. v. Witty, supra,* and with the above constitutional provision, indicates very clearly that the courts of Illinois do not hold railroad corporations to the strict liability of common carriers enforced in this state.

On request of the defendant in error the district court gave the jury the following instruction: "The court instructs the jury that the defendant cannot limit its liability by contract for negligence, but that it is liable for all damage resulting from its carelessness or negligence in the transportation of said stallion by defendant as a common carrier.  The fact that this contract was made in the state of Illinois makes no difference, for the reason that the law and decisions of the supreme court of that state are similar to the law and decisions of the supreme court of Nebraska upon the principles that are given in this case, that in neither state can a common carrier limit his liability, either by express contract or otherwise, against negligence or the use of reasonable care and diligence.  Therefore, the plaintiffs are entitled to recover the full value of said stallion at what he was worth when he was shipped;  provided, that you believe that while he was being shipped over the railroad of the defendant he received injuries resulting in his death, from the carelessness or negligence of said railroad company in his transportation."  The court, it seems to us, erred in giving the construction which he did to the opinions of the courts of Illinois which had been offered in evidence, for in each of these there was distinctly recognized the right to limit by contract the liability of the carrier, under certain conditions, to the value stated in the shipping bill.  This is in direct conflict with the views of this court as expressed in the Witty case.  The recovery was in the sum of $650, while the value fixed in the shipping bill was about $100, so that we cannot avoid the conclusion that the jury was controlled by the instruction quoted.  Again, there seems to be a difference held with respect to the degree of negligence which may be contracted against, which difference was not noted by the district court.  Among these misapprehensions, however, there was recognized the controlling principles recognized in this state, that a common carrier cannot limit his liability for negligence, and that the value of the horse as

it was proved, and not as stated on the shipping contract, must govern the amount of the recovery. Since these two propositions correctly embody the law of this state, the verdict should be sustained notwithstanding the errors noted in the instruction, unless, as plaintiff in error contends, the law of Illinois must prevail. Ordinarily the law of the place of shipment should be held to be the law with reference to which the shipper and carrier have contracted, in the absence of direct evidence of an intention to be governed by some other rule. The cases cited by the plaintiff in error, for our present purposes, may be conceded to establish this proposition. As a general rule the proposition may be also accepted as correct that where parties, in good faith, have entered into a contract valid and binding in the state where made, it will be enforced in another state. This enforcement is a matter of comity, however, and not of absolute right. As was said by Chief Justice Taney in *Bank of Augusta v. Earle*, 13 Pet. [U. S.], 519: "The comity thus extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and it is inadmissible when contrary to the policy or prejudicial to its interests." To the same effect is the language of Story—that no state will enforce a foreign law if it be "repugnant to its policy or prejudicial to its interests." (Story, Conflict of Laws, sec. 38.) The restrictions under which comity between states should be allowed to control was very fully discussed in *Armstrong v. Best*, 17 S. E. Rep. [N. Car.], 14, wherein the above quotations will be found. In Massachusetts the liability of common carriers has been permitted, by contract, to be restricted with respect to interstate commerce as, and perhaps more uniformly, than in any other state, but this restriction has always been conditioned that the contract creating it must be neither immoral nor illegal, tested by the law of that commonwealth. (*Fonseca v. Cunard Steamship Co.*, 153 Mass., 553; *Greenwood v. Curtis*, 6 Mass., 358; *Milliken v. Pratt*, 125 Mass., 374.) It may be of advantage to illustrate the

application of this rule by the use of adjudicated cases not treating of or involving the liability of common car riers.

In *Oscanyan v. Arms Co.*, 103 U. S., 261, there was involved the right of a Turkish consul to recover a commission agreed to be paid to him for recommending to his government certain supplies. This agreement, not enforceable in the United States, was valid in Turkey, yet the principle of comity was held insufficient to overcome the repugnance with which such a transaction is viewed in this country.

The syllabus of *Lemonius v. Mayer*, 14 So. Rep. [Miss.], 33, is as follows: "Act March 7, 1882, entitled 'An act to prohibit the purchase and sale of "futures" in the state of Mississippi' (Acts, 1882, p. 140), section 1, made it unlawful to deal in contracts commonly called 'futures' 'in this state,' and prescribed a punishment for dealers therein. Section 2 provided 'that no money advanced for the purchase of futures, nor any agreement for the payment of any sum for such purchases, shall be enforced in any court in this state.' Held, that the contracts between purchasers of 'futures' and their brokers made without the state while such statute was in force cannot be enforced in Mississippi, though valid where made."

In *Dammert v. Osborn*, 35 N. E. Rep. [N. Y.], 1088, it was held by the New York court of appeals as follows: "Where the courts of this state cannot give effect to testamentary dispositions of personal property in foreign wills without violating the laws or public policy of the state, the property should be remitted to the jurisdiction of the domicile, to the end that it may administer its own laws; but if there is no law or public policy here that forbids the execution of the purpose that the testator had in view, then the courts of this state will give effect to the disposition according to the law under which it was made."

In *Sheldon v. Blanvelt*, 7 S. E. Rep. [S. Car.], 593, Blanvelt, a citizen of New York, had executed a general as-

signment for the benefit of his creditors, providing for the payment of all wages and salaries of his employes in preference to all other creditors, as required by the statute of New York. The assignment was executed and recorded in all respects as required by the statutes of that state. The principal part of the assignor's property was in New York, though he owned some real estate and personal property in South Carolina. Before possession of the property in South Carolina had been taken by the assignee, it was seized by virtue of writs of attachment sued out at the instance of creditors residing in New York and Connecticut. A statute of South Carolina provided that any assignment for the benefit of creditors made by an insolvent debtor containing a preference of one creditor over another should be absolutely void. It was held that the deed of assignment was void so far as the property located in South Carolina was concerned, and that it was immaterial that none of the attaching creditors resided in that state.

In the United States district court of the southern district of New York, in the case of *Schulze-Berge v. The Guildhall*, 58 Fed. Rep., 796, there was under consideration a stipulation in favor of a carrier entered into at Rotterdam, whereby said carrier was exonerated from liability for negligence in the transportation of certain merchandise to New York, and it was held that such a stipulation, valid where made, was contrary to the public policy of this country and therefore would not be enforced.

The question intended to be illustrated by the analogies afforded by the above quotations is whether or not the restriction of the liability of a common carrier in this case, though valid in Illinois, is illegal or so contrary to the public policy of this state that it should not be enforced on the principle of comity between states.

In *Texas & P. R. Co. v. Davis*, 2 Tex. App. (Civil Cases), 156, the statutory inhibition was with reference to restrictive contracts by carriers in that state; hence that case throws no light on the question involved in this.

The language of our constitution, "that the liability of railroad corporations as common carriers shall never be limited," is very clear and comprehensive. The legislature of this state, in the face of this provision, is powerless to provide a restriction on the liability which was enforced in *Chicago, R. I. & P. R. Co. v. Witty, supra.* The courts of this state are equally bound by this constitutional provision and, by a construction given legislative enactment or otherwise, cannot limit the liability of a railroad company as a common carrier. The supreme law forbids the exercise of these powers, legislative or judicial, and, as was held in the Witty case, the power by contract in this state to restrict the liability of a common carrier does not exist. The statement that such a restriction is illegal in this state is, therefore, a mere truism. To ask that the law of this state, on principles of comity, shall give way to the law of Illinois is to ask that the courts of this state shall sanction what by the constitution has been declared illegal and against the public policy of this commonwealth. To this we can never assent. The instruction, while it embodied an error as to the identity of the law of Illinois with that of this state, nevertheless correctly stated the principles which should govern the jury in its deliberations. For this reason it was not prejudicially erroneous. The judgment of the district court is

AFFIRMED.