WABASH RAILROAD COMPANY v. MORTON R. SHARPE.

FILED APRIL 18, 1906. No. 14,274.

1. **Carriers:** FREIGHT, INSURERS OF DELIVERY. The general rule is that a common carrier of goods insures their safe delivery to the consignee against loss or injury from whatever cause arising, except only the act of God or the public enemy.

2. ———: ———. A common carrier is responsible for injury to goods

where the goods were exposed to injury by the carrier's inexcusable detention, and the carrier cannot in such case plead the act of God as a defense.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*F. M. Hall, George S. Grover* and *C. C. Marlay*, for plaintiff in error.

*Mockett & Polk* and *O. B. Polk, contra.*

DUFFIE, C.

May 19, 1903, Morton R. Sharpe delivered to the Wabash Railroad Company, at Lafayette, Ind., 5,400 pounds of household goods for shipment to Lincoln, Nebraska. The goods were shipped from Lafayette on the 21st of May, were delayed in Hannibal, Missouri, 24 hours for rebilling, and were delivered to the Missouri Pacific Railway Company, a connecting carrier at Kansas City, on May 26, and held in the yards by the latter company until May 31, where they were practically destroyed by the great flood occurring at that time. The goods finally reached Lincoln June 18, but in such condition as to be useless. This action was brought to recover the value of said goods, and judgment went in favor of the plaintiff for $865.80, from which judgment the company has taken error to this court.

It is claimed by the railroad company that they shipped the goods within a reasonable time, and delivered them to the connecting carrier at Kansas City in good condition. This may all be true, and still it is no answer to the plaintiff's claim. The common carrier of goods insures their safe delivery to the consignee against loss or injury from whatever cause arising, except only the act of God and the public enemy. The delivery of the goods to the carrier in good order, and their arrival at the place of destination in bad order, makes a *prima facie* case against the carrier. It then devolves upon it to show that the loss or damage

was caused by the act of God or some other cause which would exempt it from liability. It may be conceded in the present case that the flood by which the goods were practically destroyed was an act of God, which, under ordinary circumstances, would relieve the company; but we think the rule supported by the weight of authority is that a common carrier is responsible for injury to goods by act of God, if he departs from his line of duty, and while thus in fault, and in consequence of that fault, the goods are injured by an act of God which would not otherwise have produced the injury. Or, as stated in one of the cases, a common carrier is responsible for injury to goods by act of God where the goods were exposed to injury by the carrier's inexcusable detention. *Read v. Spaulding,* 30 N. Y. 630; *Michaels v. New York C. R. Co.,* 30 N. Y. 564. In *McClary v. Sioux City & P. R. Co.,* 3 Neb. 44, it is said:

"And it is held that if the carrier wrongfully delay the transportation of goods, and because of the delay they are injured by a flood, the carrier would be liable," citing *Lowe v. Moss,* 12 Ill. 477, and *Read v. Spaulding, supra.* In the absence of any showing to the contrary, it would seem that a delay of five days or more in the yards at Kansas City was an unreasonable delay, but there is evidence that the officer in charge of the United States weather bureau at Kansas City on May 26, the date that these goods were delivered there, notified the public and all railroad companies of the coming flood and warned them to guard their property in the lowlands, and that this notice continued from day to day until the flood had reached its height. Under this condition of affairs, there can be no doubt of the negligence of the carrier and that this negligence exposed the goods to the injury and damage that they afterwards suffered by the act of God.

It is further claimed by the defendant company that in consideration of a reduced rate given to the plaintiff he released it from all liability in excess of $5 a hundred pounds. Our constitution prohibits a common carrier

from limiting its common law liability, and in *Chicago, B. & Q. R. Co. v. Gardiner,* 51 Neb. 70, it was held: "A limitation of the liability of a common carrier contained in a shipping contract will not be recognized or enforced in this state, though valid in the state where made, when such attempted restriction of liability is illegal and contrary to the public policy of this state." This rule has been followed in numerous cases since and has become the settled law of the state.

The judgment, in our opinion, is clearly right, and we recommend its affirmance.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.