LATTA v. CHICAGO, ST. P., M. & O. RY. CO.†

(Circuit Court of Appeals, Eighth Circuit. July 26, 1909.)

No. 2,975.

1. CARRIERS (§ 218*)—CARRIAGE OF LIVE STOCK—CONTRACTS LIMITING LIABILITY—VALIDITY—LAW OF NEBRASKA.

Const. Neb. art. 11, § 4, which provides that "the liability of railroad corporations as common carriers shall never be limited," applies to contracts involving interstate commerce, and under such provision, as construed by the Supreme Court of the state, contracts made in Nebraska for the shipment of horses to another state, in which, in order to obtain the rate of freight named in the tariff schedules of the company, based on such valuation, the shipper is obliged to agree that the liability of the company shall, in case of loss, be limited to $100 per head, regardless of actual value, are void as to such attempted limitation, and the shipper may recover the actual value.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 218.*]

2. CARRIERS (§ 46*)—INTERSTATE COMMERCE—LIABILITY FOR LOSS OF PROPERTY—LAW GOVERNING.

The Hepburn act (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1907, p. 909]), relating to the liability of common carriers of property in interstate commerce for loss or damage to such property, but which contains the proviso "that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law," leaves a shipper free to resort to the laws of a state applicable to his contract.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 46.*]

In Error to the Circuit Court of the United States for the District of Nebraska.

H. C. Brome (M. R. Hopewell and W. M. Hopewell, on the brief), for plaintiff in error.

Carl C. Wright (B. T. White, on the brief), for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 11, 1909.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. Latta brought this suit in a state court in Nebraska against the Chicago, St. Paul, Minneapolis & Omaha Railway Company to recover damages from it as a common carrier for the breach of a contract to transport from Tekamah, Neb., to Waterloo, Iowa, one mare and colt. The petition alleges that, by the negligence of the defendant, said mare and colt were burned while being transported on the line of defendant's railway in the state of Nebraska, and claims damages to the amount of $3,024.38. The defendant removed the suit into the Circuit Court of the United States for the District of Nebraska, where it was tried by a jury. As a part of the cross-examination of the plaintiff, counsel for defendant offered in evidence the contract under which said property was to be transported, also a paper called a "shipping order." The offering of these instruments was objected to by counsel for plaintiff, but the trial court overruled the objection and admitted them in evidence. The plaintiff gave testimony tending to prove the alleged negligence and how the loss and injury occurred. He then offered evidence tending to show that the value of the mare and colt was $2,500. Counsel for defendant objected to this testimony in regard to value on the ground that it was not competent for the plaintiff to prove any damage or loss in excess of that set out in the contract. Counsel for plaintiff then offered to prove by other witnesses the allegations of his petition. Whereupon the trial court ruled that the defendant was liable in any event for the loss of the mare and colt, but that it was only liable for the amount specified in the contract, and, against the objection of counsel for plaintiff, directed the jury to return a verdict in favor of plaintiff in the sum of $220.09. It was shown at the trial that the rate of $24.38 charged by the defendant for the transportation of the animals mentioned was its regular tariff based upon the valuation stated in the contract. It was also conceded at the trial that said tariff rate had been filed with the Interstate Commerce Commission, and published as required by law, and that the rules, regulations, and tariffs of the defendant on file with the Interstate Commerce Commission disclosed that the above named rate applied to the limited liability contract in use by the company for the transportation of live stock.

The errors assigned herein are that the court erred in refusing to permit the plaintiff to show the actual damage he had sustained, and in so charging the jury as to restrict their verdict to the sum above stated. The contract between plaintiff and defendant for the transportation of the mare and colt so far as is material to the question now under investigation was in the following language:

"Read this Contract.

"Chicago, St. Paul, Minneapolis & Omaha Railway Co.

"It is the desire of this company that this contract shall be executed on all shipments of live stock in car load lots or less. In case shipper declines to execute this contract, the valuation of the live stock, as stated by the shipper, shall be stated on the shipping bill, and in such case the rates will be 10 per cent. higher than they would be under this contract if he executed it. If the shipper declines either to state the value of the live stock on the shipping bill

or execute this contract, the charges in that case will be 10 per cent. higher than the rates provided in this contract when the owner or shipper declares the value of the stock to be over $800. per head or declines to declare its value.

| Nos. of Way-bills. | Initials and Nos. of cars | No. and Kind of animals in each car. Shipper's Count. |
|---|---|---|
| C. G. W. | 5721 | 1  Horse |
|  |  | 1 Colt 7501½ |
| S. L. & C. |  | Live Stock Contract. |
|  |  | Tekamah Station, 5–9'07 |

"This agreement entered into on the day above stated, between the Chicago, St. Paul, Minneapolis & Omaha Railway Company and B. R. Latta.

"Witnesseth, That the said railway company has this day received from the said B. R. Latta, one horse to be transported from Tekamah, Nebr., station to Waterloo, Ia., station, consigned to Joe McLaughlin, at D. O. at the rate of trf. per cwt. upon the terms and conditions following, that is to say; The said Railway Company shall not be liable for the loss or death of, or any injuries received by, any of such stock, unless the same is immediately caused by the willful misconduct or the actual negligence of the said Company, or its agents, servants or employés.

"The rates provided in the tariffs of this company are based upon the following value of animals named, to-wit:

"One hundred dollars per head on each horse or pony (gelding, mare or stallion), mule or jack.

"Fifty dollars per head on each ox or bull.

"Thirty dollars per head on each cow.

"Ten dollars per head on each calf or hog.

"Three dollars per head on each sheep or goat.

"And if this shipment is moved at the tariff rate it is agreed that the value of the animals shipped does not exceed, of their kind, per head the above named valuation.

"If the shipper declares a value in excess of the above valuation, and this shipment is moved at a rate based thereon, it is agreed that the value of the animals shipped does not exceed such declared valuation, which is as follows:

Each horse or pony (gelding, mare or stallion) mule or jack, per
head .......................................................... $100.00
Each ox or bull................................................ $  ....
Each cow, per head............................................ $  ....
Each calf or hog, per head.................................... $  ....
Each sheep or goat, per head................................. $  ....

"The shipment covered by this contract is accepted and forwarded subject to the agreed valuation, and the rate of freight is based on the condition that the railway company assumes liability only to the extent of such agreed valuation.

"When the declared value exceeds the valuation on which the tariff rate is charged, an addition of 25 per cent will be made to such rate for each 00 per cent or fraction thereof, additional declared value per head up to $800.00 per head. When the owner or shipper declares the value to be greater than $800.-00 per head, or declines to declare the value of the stock, charges will be based upon 200 per cent of the rate provided above, based on value of $800.00."

The shipping order signed by plaintiff was in the following language:

"See Contract on Back of this Shipping Order.

Chicago, St. Paul, Minneapolis & Omaha Railway Co.

"Shipping Order.

| Car No. 5721 | (To be retained by Agent) | No....... |
|---|---|---|
| Initials of Car C. G. W. | Tekamah, Station 5–9, 1907 | |

"(The shipper may elect to accept the conditions printed on the back hereof and as contained in the bill of lading of which this shipping order is a part,

or may, as provided below, require the carriage of property at 'Carrier's Risk.)'

"Receive, carry and deliver the articles described below in accordance with the tariff and classification in effect at the date of this order and subject to the conditions of the bill of lading of which this shipping order is a part. (For carrier's liability see note below.)

| Consignee, Destination, Marks and Routing | Articles | Weight Subject to Correction. |
|---|---|---|
| Joe McLaughlin, | 1 horse | |
| | 1 colt under 1 year | |
| Waterloo, Iowa. | | 2000 |
| | O Rel to Cont. val. | 750 |
| | S. L. & C. | |
| | Paid to Apply, | $24.38 |
| Charges Advanced. | | B. R. Latta, Shipper. |

[In red ink across the face:] Grain subject to Elevator Delivery.

"If the shipper elects not to accept the said tariff rates and conditions, he should so notify the agent of the receiving carrier at the time his property is offered for shipment, and if he does not give such notice it will be understood that he desires his property carried subject to the conditions of the bill of lading of which this order is a part, in order to secure the reduced rates thereon. Property carried not subject to the conditions of the bill of lading will be at the carrier's liability, limited only as provided by common law and by the laws of the United States, and of the several states in so far as they apply. Property thus carried will be charged at the higher rating provided in current tariffs and classifications to apply when not shipped subject to the conditions of the bill of lading of which this is a part, and the cost of marine insurance will be added over any part of the route that may be by water."

"'No. 16. Owner's Risk. All property received and shipped O. R. (meaning owner's risk) is shipped subject to the conditions printed on the back of this receipt, and to all conditions, specified in general tariffs and classifications, and at a reduced rate by reason of the acceptance of such conditions. If the shipper does not accept such conditions he must give notice to the agent at the time of the signing of the shipping bill, and by so doing may have goods forwarded subject only to conditions imposed by law, in which case additional charges will be made, as provided in general tariffs and classifications.'"

It appears from the record before us that the tariff rate for the transportation of live stock over defendant's road based upon a valuation of $100 each for horses is open to all shippers who will sign the contract prepared in such cases by defendant; that no shipper is entitled to the limited live stock rate unless he signs said contract; that the valuation thus fixed by the contract is arbitrarily fixed long prior to any particular shipment and has no reference to the actual value of any particular horse; that the shipper in order to obtain this limited live stock rate must declare the value of his horse to be $100. The contract in the case at bar said:

"If the shipper declares a value in excess of the above valuation, and this shipment is moved at a rate based thereon, it is agreed that the value of the animals shipped does not exceed such declared valuation, which is as follows: Each horse or pony (gelding, mare, or stallion) mule or jack, per head, $100."

In other words, if the shipper desires to avail himself of the limited valuation tariff rate, he has no option whatever but to declare his horse to be of the value placed on it by the defendant. There is no use of contending that the contract in question was not a limitation

of the defendant's common-law liability as a common carrier. The defendant so names it, and it conclusively appears that the limitation of liability is the primary purpose of the provision in regard to value. The question whether the limitation as to value is valid or not is another proposition. Such a contract was upheld in Hart v. Pennsylvania R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; the Supreme Court stating the rule as follows:

"When a contract of carriage signed by the shipper is fairly made with a railroad company, agreeing on a valuation of the property carried, with a rate of freight based on condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss by the negligence of the carrier the contract will be upheld as a proper and lawful mode of securing a true proportion between the amount for which the carrier may be responsible and the freight it receives and of protecting itself against extravagant and fanciful valuations."

The following cases also are in harmony with the rule above stated: Scruggs v. Baltimore, etc., Ry. Co. (C. C.) 5 McCrary, 590, 18 Fed. 318; Ormsby v. U. P. R. R. Co. (C. C.) 4 Fed. 706; Judson v. Western R. R. Corporation, 6 Allen (Mass.) 486, 83 Am. Dec. 646; Adams Express Co. v. Stettaners, 61 Ill. 184, 14 Am. Rep. 57; Ga. Pacific Ry. Co. v. Hughart, 90 Ala. 36, 8 South. 62; Ullman v. C. & N. W. Ry. Co., 112 Wis. 150, 88 N. W. 41, 88 Am. St. Rep. 949; Railway Co. v. Sowell, 90 Tenn. 17, 15 S. W. 837; Rosenfeld v. Peoria, Decatur & Evansville Ry. Co., 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500; Western Railway Co. v. Harwell, 91 Ala. 340, 8 South. 649; 4 Elliot on Railroads, 2336; 14 L. R. A. pp. 434, 435, note; 1 Hutchinson, Carriers, § 427, and cases cited. But these cases all deal with the power of common carriers to limit their common-law liability in the absence of a statute restricting such power. The Constitution of Nebraska in article 11, § 4, provides: "The liability of railroad corporations as common carriers shall never be limited." This language by an unbroken line of decisions by the Supreme Court of Nebraska has been construed as avoiding all attempts to limit the common-law liability of railroad corporations as common carriers. Missouri Pacific R. Co. v. Vandeventer, 26 Neb. 222, 41 N. W. 998, 3 L. R. A. 129; St. Joseph & Grand Island R. Co. v. Palmer, 38 Neb. 463, 56 N. W. 957, 22 L. R. A. 335; Union Pacific R. Co. v. Metcalf, 50 Neb. 452, 69 N. W. 961; C., B. & Q. R. Co. v. Gardiner, 51 Neb. 70, 70 N. W. 508; Wabash R. Co. v. Sharpe, 76 Neb. 424, 107 N. W. 758, 124 Am. St. Rep. 823. The case of C., B. & Q. v. Gardiner, 51 Neb. 70, 70 N. W. 508, involved the shipment of a horse from Peoria, Ill., to Hastings, Neb. The value of the horse was agreed to be $100 in the contract of shipment, and in connection therewith was the following language:

"And that the above rate of transportation is based upon the agreement that in case of loss or damage, whether resulting from accident or negligence of said railroad company or its servant, said railroad company does not assume a liability for such loss or damage to exceed the valuation of each animal."

The Supreme Court of Nebraska held this provision of the contract void, although it was contended that the contract was good in Illinois, where it was made. The law as stated in the Constitution of Ne-

braska as interpreted by her Supreme Court in the absence of legislation by Congress is clearly applicable to contracts involving interstate commerce. Chicago, Milwaukee & St. Paul Railway Company v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Pennsylvania R. R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268. The contract in question was a Nebraska contract, and her Constitution as interpreted by her Supreme Court, which interpretation is binding on us, struck down the limitation of the right of recovery in said contract as soon as it was made. Chicago, Milwaukee & St. Paul Railway Company v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Pennsylvania R. R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268.

It is claimed, however, that Congress has legislated upon the very subject now under discussion, and that in consequence thereof the law of Nebraska, so far as it is sought to enforce the same against the provisions of a contract in relation to Interstate Commerce, is inoperative. In this connection our attention is called to Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 (U. S. Comp. St. Supp. 1907, p. 909). In the section referred to is found the following language:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

It plainly appears from a reading of the above language that Congress has legislated upon the subject of the liability of railroad corporations as common carriers when engaged in interstate commerce. If it were not for the proviso accompanying the language above quoted, we should feel compelled to determine the validity of the contract in question with reference to the law of Congress. We think that the proviso found in the law above quoted was placed therein to cover just such a case as is now presented. Congress, undoubtedly, was aware of the many conflicting decisions by the courts in reference to the question as to how far common carriers could limit their common-law liability by contract, receipt, rule, or regulation. It therefore was aware that the Constitution of Nebraska as interpreted by her Supreme Court was in conflict with the rule established by the United States Supreme Court in Hart v. Railway Company, supra; and was also aware that the Supreme Court of Pennsylvania in Grogan v. Adams Express Company, 114 Pa. 523, 7 Atl. 134, 60 Am. Rep. 360, refused to follow the rule established by said case of Hart v. Railway Company, supra; and therefore, in view of these conflicting opinions, very wisely provided that the legislation by Congress should not deprive "any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

We are therefore of the opinion that the right which the plaintiff

in this case had under the law of Nebraska to sue for the full value of his property was not taken away by the legislation of Congress herein referred to, but was preserved to him, and that he may now enforce that right as he has attempted to do.

It results that the judgment of the trial court must be reversed and a new trial granted, and it is so ordered.