PENNSYLVANIA COMPANY V. KENNARD GLASS & PAINT
COMPANY ET AL.

FILED DECEMBER 19, 1899.  No. 9,034.

1. Review: PARTIES.  A judgment can not be reviewed by one not a
party thereto, or who is not affected thereby.

2. Carriers: CONTRACTS LIMITING LIABILITY: CONSTITUTIONAL LAW.
Under the constitution of this state a common carrier of freight
can not lawfully stipulate for the release from liability for loss
or damage occasioned by its own negligence, and such a stipula-
tion in a contract of affreightment is illegal and void.

3. Instructions: HARMLESS ERROR.  Neither the giving of an instruc-
tion technically erroneous, nor the refusal of the one stating
the law correctly, will work a reversal of a judgment, where it
is obvious that the complaining party was not prejudiced
thereby.

4. Allegations and Proof.  Material averments in an answer, which
are controverted by the reply, rest upon the defendant to estab-
lish by evidence upon the trial.

5. Evidence: FOREIGN LAWS: PRESUMPTIONS.  The laws of a sister
state will be presumed to be the same as our own when the con-
trary is not shown.

6. Cross-Examination of Witnesses.  The cross-examination of a
witness should be confined to the matter covered by his examina-
tion in chief.

7. Trial: ORDER OF INTRODUCING TESTIMONY.  The order in which
testimony shall be introduced is discretionary with the trial
court, and its ruling in that regard is no cause for reversal, where
no abuse of discretion is shown.

ERROR from the district court of Douglas county. Tried below before SLABAUGH, J.   *Affirmed.*

The opinion contains a statement of the case.

*Will A. Corson* and *Winfield S. Strawn,* for plaintiff in error:

In arguing the points that the contract of affreightment was a Pennsylvania contract, and should be construed by the laws of that state, and that in Pennsylvania a carrier, by contract, may limit its liability, reference was made to the following cases: *Missouri P. R. Co. v. Vandeventer,* 26 Nebr., 222; *St. Joseph & G. I. R. Co. v. Palmer,* 38 Nebr., 463; *Atchison, T. & S. F. R. Co. v. Lawler,* 40 Nebr., 356; *Omaha & R. V. R. Co. v. Crow,* 47 Nebr., 84; *Missouri P. R. Co. v. Tietken,* 49 Nebr., 130; *Union P. R. Co. v. Metcalf,* 50 Nebr., 452; *Fremont, E. & M. V. R. Co. v. Waters,* 50 Nebr., 592; *Atchison & N. R. Co. v. Washburn,* 5 Nebr., 117; *Chicago, R. I. & P. R. Co. v. Witty,* 32 Nebr., 275; *Union P. R. Co. v. Marston,* 30 Nebr., 241; *Farnham v. Camden & A. R. Co.,* 55 Pa. St., 5; *Grogan v. Adams Express Co.,* 114 Pa. St., 523; *Patterson v. Clyde,* 67 Pa. St., 500; *American Express Co. v. Sands,* 55 Pa. St., 140; *Fairchild v. Philadelphia, W. & B. R. Co.,* 148 Pa. St., 527; *Forepaugh v. Delaware, L. & W. R. Co.,* 128 Pa. St., 217; *Hart v. Pennsylvania R. Co.,* 112 U. S., 331; *Talbot v. Merchant's Despatch Transportation Co.,* 41 Ia., 247; *Arnold v. Potter,* 22 Ia., 194; *McDaniel v. Chicago & N. W. R. Co.,* 24 Ia., 412; *Western & A. R. Co. v. Exposition Cotton Mills,* 81 Ga., 522; *Cantu v. Bennett,* 39 Tex., 303; *Beard v. St. Louis, A. & T. H. R. Co.,* 79 Ia., 531; *Dike v. Erie R. Co.,* 45 N. Y., 113; *First Nat. Bank of Toledo v. Shaw,* 61 N. Y., 294; *Brooke v. New York, L. E. & W. R. Co.,* 108 Pa. St., 529; *Liverpool & Great Western Steam Co. v. Phenix Ins. Co.,* 129 U. S., 397; *Michigan C. R. Co. v. Boyd,* 91 Ill., 268; *Benton v. German-American Nat. Bank,* 45 Nebr., 850.

The contract of affreightment is one that is perfectly legal, and which may properly be made where **not** for-

bidden by the law of the place where the contract is entered into.   See *Fairchild v. Philadelphia, W. & B. R. Co.*, 148 Pa. St., 527; *Atchison, T. & S. F. R. Co. v. Mason*, 46 Pac. Rep. [Kan.], 31; *Atchison, T. & S. F. R. Co. v. Dill*, 48 Kan., 210; *Pierce v. Southern P. R. Co.*, 47 Pac. Rep. [Cal.], 874; *Loeser v. Chicago, M. & S. P. R. Co.*, 69 N. W. Rep. [Wis.], 372; *Schaller v. Chicago & N. W. R. Co.*, 71 N. W. Rep. [Wis.], 1042; *York County v. Illinois C. R. Co.*, 3 Wall. [U. S.], 107; *Chicago, M. & S. P. R. Co. v. Solan*, 18 Sup. Ct. Rep., 89; *Texas & P. R. Co. v. Payne*, 38 S. W. Rep. [Tex.], 366; *Hoffman v. Cumberland V. R. Co.*, 37 Atl. Rep. [Md.], 214; *Miller Grain & Elevator Co. v. Union P. R. Co.*, 40 S. W. Rep. [Mo.], 894; *St. Louis Ins. Co. v. St. Louis, V., T. H. & I. R. Co.*, 104 U. S., 146; *Richmond & A. R. Co. v. Patterson Tobacco Co.*, 18 Sup. Ct. Rep., 335; *Smith v. Alabama*, 124 U. S., 465; *Hall v. De Cuir*, 95 U. S., 485; *Welton v. State*, 91 U. S., 275; *Brown v. Houston*, 114 U. S., 622.

The case of *Chicago, B. & Q. R. Co. v. Gardiner*, 51 Nebr., 70, if sound in principle, differs materially from the case at bar, and is in no manner decisive thereof.

Repudiation of the Pennsylvania contract is a violation of section 1, article 4, of the constitution of the United States, and of section 1 of the 14th amendment to said constitution.   See *Allgeyer v. Louisiana*, 165 U. S., 578.

*Kennedy & Learned* and *Montgomery & Hall, contra.*

NORVAL, J.

In 1893 the Kennard Glass & Paint Company of the city of Omaha purchased of the Pittsburg Plate Glass Company a quantity of plate glass of the value of about $3,000.   The glass was properly packed in boxes by the vendor, loaded upon a car at Ford City, Pennsylvania, and delivered to the Allegheny Valley Railway Company at said point for transportation to the vendee in the city of Omaha.   The glass was carried by said railroad company to Pittsburg, where the same was delivered to the

Pennsylvania Company, and it delivered the freight in the city of Chicago to the Chicago, Milwaukee & St. Paul Railway Company, and the latter corporation transported the freight to the city of Omaha, where the glass was delivered to the consignee in a badly broken and damaged condition. This action was instituted by the Kennard Glass & Paint Company against the Pennsylvania Company and the Chicago, Milwaukee & St. Paul Railway Company to recover damages sustained by reason of the alleged negligence of the defendants in the transportation of said glass, and their failure to safely carry said freight to its place of destination. In the amended petition it was alleged, in substance and effect, that the defendants were common carriers, and for a certain reward received the glass in question at Ford City to be safely carried to Omaha; that the glass was not safely transported to the place of destination, but was broken and damaged in transit to the amount of $433.12. It was also averred that the damage was occasioned by reason of a collision between the car on which the glass was being transported and a car loaded with telegraph poles or timbers. Separate answers were filed by the defendants. That of the Pennsylvania Company admitted only the associate capacity of plaintiff, and the incorporation of the defendant, all other averments of the petition being denied. The Pennsylvania Company, for further answer, alleged that on January 3, 1893, the Pittsburg Plate Glass Company entered into a written agreement with the Allegheny Valley Railway Company, the initial carrier, of which the following is a copy:

"ALLEGHENY VALLEY RAILWAY COMPANY.

"UNIFORM ANNUAL RELEASE.

"FORD CITY STATION, January, 1893.

"Whereas, The Allegheny Valley Railway Company has two different rates of charges for tolls and transportation upon certain articles, viz.: The higher rate, upon the payment of which it assumes the ordinary liability of a common carrier upon its railway for property trans-

ported by it; and another lower rate, at which it transports for all those who release it from all liability, so far as may lawfully be done, for any loss or damage, to property entrusted to it for transportation.

"And Whereas, The Pittsburg Plate Glass Co., the undersigned, has determined to ship all property which they furnish for transportation during the year ending upon the thirty-first day of December, 1893, at the reduced rates above referred to, and in consideration thereof to release so far as it lawfully may, the said company and any and every other railway or transportation company to which the said property may be delivered for transportation to or toward its place of destination, from all liability for any loss thereof or damage thereto, considering that the difference in their favor in the cost is equivalent to the risk of transportation.

"Therefore, In consideration of the premises, the said Pgh. P. G. Co. does hereby release and discharge, so far as they lawfully may, the said railway company and all other railway transportation to or toward its place of destination from all claims, demands or liabilities for any loss thereof or damages thereto howsoever occurring by fire or otherwise, or whether by negligence of said railway or transportation companies, or of their or either of their officers, agents, or employees or otherwise, while the same is in their care, custody, or possession.

"And the said Pgh. P. G. Co. hereby authorize the said railway or transportation company and any such other railway or transportation company as their agent, to deliver the said property to any other railway or transportation company over whose route it may be carried to or toward its place of destination, and they agree that no such railway or transportation company shall be considered as carrier of said property beyond its own road or line or in any event be held liable for loss of or damage to said property while in the possession of any other railway or transportation company to which the said property may be delivered as aforesaid.

"This contract is supplemental to the contract contained in any bill of lading issued in respect to any shipment made by the above named shipper.

"In witness whereof, the said Pgh. P. G. Co. has executed this release in Ford City, Pa., this third day of January, A. D. 1893.

"PITTSBURG PLATE GLASS COMPANY,

"R. W. MCCUTCHEON,                    *Shipper.*

"*Railway Agent.*        D. S. ROBINSON,

"*General Manager Ford City Works.*"

In the answer it was also pleaded that in pursuance of said contract, and in consideration of a lower rate of freight, the Allegheny Valley Railway Company was released by the consignor from all loss or damage to freight shipped during the year 1893, not arising from negligence of said Allegheny Valley Railway Company, its servants and employés; and that the glass in question was carried under said contract, which was valid under the laws of the state of Pennsylvania. The answer of the Chicago, Milwaukee & St. Paul Railway Company admitted its own incorporation and the associate character of the plaintiff; that the glass was delivered to the Pennsylvania Company for safe conveyance from Ford City to Omaha; admitted that the answering defendant received the glass at Chicago from its co-defendant, and that it carried the same to Omaha. Every other allegation of the petition was denied by the answer, and it was specifically averred therein that the defendant handled and transported the glass in a careful and prudent manner, and that it was not damaged or injured while in its possession. Said defendant, in its answer, also pleaded the "Uniform Annual Release," copied above, and alleged that the glass was received and transported under, and in pursuance of, the terms thereof. Plaintiff replied to these answers by a general denial. A verdict was returned in favor of the plaintiff, and against the Pennsylvania Company, for the sum of $433.12 and interest. Judgment was rendered thereon; and the court dis-

missed the action as to the Chicago, Milwaukee & St. Paul Railway Company. The Pennsylvania Company alone has prosecuted a petition in error, making the other parties to the cause defendants in error.

The judgment rendered in favor of the Chicago, Milwaukee & St. Paul Railway Company, it is obvious, can not be disturbed. The plaintiff below, the Kennard Paint & Glass Company, filed no motion for a new trial, nor has it prosecuted a petition in error; therefore, the judgment of the district court is conclusive against the plaintiff below. The Chicago, Milwaukee & St. Paul Railway Company recovered no judgment against the Pennsylvania Company, for its recovery was against the plaintiff below only. The defendants were not jointly liable for the damages sustained by the plaintiff, and the Chicago, Milwaukee & St. Paul Railway Company, it is plain, is not answerable for any injury to the glass while the same was in the possession of the Pennsylvania Company; consequently the latter was in nowise prejudiced by the dismissal of the action as to its co-defendant. See *Burlington & M. R. R. Co. v. Martin*, 47 Nebr., 56. It is but just to counsel for plaintiff in error that we should state that they are not seeking to have reviewed the judgment recovered against the plaintiff below by the Chicago, Milwaukee & St. Paul Railway Company.

The court instructed the jury that the defendants were common carriers, and as such each was an insurer of the safe delivery of goods intrusted to it for transportation, and liable for all loss or damages to such goods not arising from the act of God or the public enemy. The seventh, ninth, tenth and eleventh paragraphs of the court's charge are as follows:

"7. You are instructed that under the laws of the state a contract between a shipper and a common carrier, which by its terms limits the liability of the carrier in transportation of goods, or relieve it entirely or partially from damages for injury or loss to such goods resulting from the negligence and carelessness of such carrier, is void and of no effect.

"9. If you find from the evidence that the plate glass in question was damaged and that such damage occurred on either of the defendants' railway lines, and while being transported by either of the defendants under its contract and over its railway line, although under special agreement as to transportation limiting liability, you will find for the plaintiff and against the defendant which was so transporting said goods when they were so damaged, if either of them were at such time, transporting such goods.

"10. In other words, gentlemen of the jury, in this case you are to determine from the evidence whether or not the goods in question were damaged while being transported by either of these defendants, and if you find the goods were damaged while being transported by either of these defendants, you should find for the plaintiff and against the defendant so transporting such goods when they were damaged, and also determine in your verdict the amount of damage sustained by plaintiff.

"11. If you find from all the evidence in the case that the damage to the glass in controversy occurred before the delivery thereof by the Pennsylvania Company, defendant, to the Chicago, Milwaukee & St. Paul Railway Company, defendant, then your verdict should be in favor of the Chicago, Milwaukee & St. Paul Railway Company, defendant. Likewise, if you find from all the evidence in the case that the damage to the glass in controversy did not occur while being transported by the Pennsylvania Company, then you should find in favor of the Pennsylvania Company."

The Pennsylvania Company tendered, among others, the following instructions, which the court declined to give to the jury, and an exception was taken to such refusal, as well as to the giving of the instructions above set forth:

"5. You are instructed that the contract under which the glass mentioned in the petition herein was agreed to

be carried, and was carried from Ford City, Pennsylvania, over the Allegheny Valley Railway Company road and the Pennsylvania Company's road, was a contract that was made in the state of Pennsylvania and the same is to be construed under and in pursuance of the laws of said state.

"6. You are further instructed that under the laws of Pennsylvania a common carrier can limit its liability for damage to freight in all cases except when said damages was occasioned by the negligence of the carrier, or its agents and servants."

The question is presented whether the Pennsylvania Company was prejudiced by the giving of the instructions quoted or the refusal to give those tendered by said corporation. It will not escape notice that the "Uniform Annual Release" entered into by the consignor with the initial carrier, the Allegheny Valley Railway Company, stipulated, upon the shipment at a lower rate, for the release of the latter by the former from loss or damage to property delivered for transportation to said carrier during the year 1893, howsoever occurring, whether by negligence of said company or that of any other carrier to which the property might be delivered for transportation, or their or either of their agents and employés. The glass was shipped in 1893, and a bill of lading was issued by the initial carrier which contained the word "released," meaning that damages to the property while in possession of the carrier were released or waived. Upon the question as to the right, power or authority of a common carrier to contract for the release of itself from liability or damages to property committed to it for transportation, this court has more than once spoken in language not susceptible of being misunderstood. In the early case of *Atchison & N. R. Co. v. Washburn*, 5 Nebr., 117, the question first came before the court, and it was ruled that the policy of the law forbids a common carrier of freight to stipulate that it shall not answer for damages resulting from its own negligence, and that

such a provision in a contract is illegal and void. In that case GANTT, J., speaking for the court, used this apposite language: "The common law fixes the degree of care and diligence due from railroad companies as common carriers; and a failure to exercise this care and diligence is negligence, without any legal distinction as being gross or ordinary; and the better rule of law, sustained by the weight of authority, is, that 'it is against the policy of the law to allow stipulations which will relieve the company from the exercise of that care and diligence, or which, in other words, will excuse them from negligence in the performance of that duty.'" That case arose before the adoption of our present state constitution. The framers of that instrument incorporated therein that "the liability of railroad corporations as common carriers shall never be limited." See Constitution, art. 11, sec. 4. That provision of the fundamental law was construed in *Missouri P. R. Co. v. Vandeventer*, 26 Nebr., 222, and COBB, J., in the course of his opinion, observed: "This clause expresses the supreme law of the state. If we can divine its meaning, then, as to us, the question is settled. In following that general rule of construction, to consider the old law, and the mischief, in order to arrive at the meaning of a proposed remedy, we here take the old law as construed by the supreme court of the United States in the above case; and I think the mischief may be assumed to have been the facility with which common carriers were enabled, either by deception or downright coercion, to induce shippers to waive their rights under the law and enter into special contracts of shipment. And while I concede as a general proposition that the true office of a state constitution is mainly to limit the powers of the legislature, and not to limit the effect of the contracts between parties, yet nearly all, and ours especially, contain departures from this rule. * * * So I conclude that the object and intent of the convention in proposing, and of the electors in adopting, this provision of the constitution here referred to was

to put it out of the power of the railroads, as common carriers, to limit their liability as such, by special agreements with shippers, and thus remove from their officers and agents all temptation to effect such exemption from liability, and the loss and damage to property which might of necessity follow the release of their responsibility and that of their agents therefrom." That a common carrier can not limit its liability for negligence has been reaffirmed in the following cases: *Chicago, R. I. & P. R. Co. v. Witty*, 32 Nebr., 275; *St. Joseph & G. I. R. Co. v. Palmer*, 38 Nebr., 463; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Nebr., 356; *Omaha & R. V. R. Co. v. Crow*, 47 Nebr., 84; *Missouri P. R. Co. v. Tietken*, 49 Nebr., 130; *Union P. R. Co. v. Metcalf*, 50 Nebr., 452; *Chicago B. & Q. R. Co. v. Gardiner*, 51 Nebr., 70. And in *St. Joseph & G. I. R. Co. v. Palmer, ubi supra,* it was held that the same rule was applicable to contracts for interstate shipments.

The instructions given by the trial court to the jury in this cause were in accordance with the doctrine announced in the decisions of this court already mentioned. But it is argued with marked legal acumen that the contract of affreightment, being a Pennsylvania contract, must be construed according to the laws of that state, and not under those obtaining here. A similar question was presented and decided in *Chicago, B. & Q. R. Co. v. Gardiner, ubi supra.* The decision is fairly reflected in the second paragraph of the syllabus, which reads thus: "2. A limitation of the liability of a common carrier contained in a shipping contract will not be recognized or enforced in this state though valid in the state where made, when such attempted restriction of liability is illegal and contrary to the public policy of the state." Ordinarily, the law of the place of the execution of a contract governs and controls; and this court, in *Benton v. German-American Nat. Bank*, 45 Nebr., 850, has so held the rule to be. The exception to this doctrine, which was recognized and applied in the said case of *Chicago, B. & Q. R. Co. v. Gardiner*, is that a contract entered into in a

sister state, though valid there, will not be enforced here, if such contract contravenes, or is opposed to, the public policy of our state. This exception to the rule is vigorously assailed, and it is urged that the refusal to enforce the contract in question is a violation of section 1, article 4, and of section 1 of the fourteenth amendment to the constitution of the United States. It can not be doubted that the effect of the decision in the *Gardiner Case* is to deny a common carrier the benefit of a defense available to it in the state where the contract of affreightment was entered into; but we are not called upon at this time, for the reasons hereafter stated, either to reaffirm or overrule the doctrine of that decision. It was established upon the trial, and we also know from the repeated adjudications of the highest judicial tribunal of the state of Pennsylvania, that in that state a common carrier may not, by special contract, limit its liability as to injury or damages arising from its own or its servants' negligence, although in other respects the carrier may limit its liability. See *Farnham v. Camden & Amboy R. Co.*, 55 Pa. St., 5; *Grogan v. Adams Express Co.*, 114 Pa. St., 523; *Fairchild v. Philadelphia, W. & B. R. Co.*, 148 Pa. St., 527; *Pennsylvania R. Co. v. Miller*, 87 Pa. St., 395; *Pennsylvania R. Co. v, Raiordon*, 119 Pa. St., 537. Therefore, the Uniform Annual Release was invalid in the state of Pennsylvania, at least to the extent it attempted to release the carrier from liability for its own negligence. The contract being invalid, to the extent indicated at the place where made, the courts of this state violate no provision of the federal constitution, nor ignore any law of Pennsylvania in holding the contract void so far as it undertook to relieve the carrier from liability for its own negligence. The rule that the Pennsylvania Company is liable for its own negligence it asserts, through its counsel, a willingness to have enforced; but it is argued that the law as given to the jury in this case wholly ignores this principle, and made the carrier responsible as an insurer and liable for the safe delivery of the glass,

unless the damages flowed from the act of God or the public enemy. This contention of counsel is entirely sound, and the judgment, for that reason, should be reversed, unless it is manifest no prejudicial error resulted from the charge of the court. If the glass was damaged or injured through the negligence of the Pennsylvania Company, or if it was not shown that the shipment was made under the Uniform Annual Release, it is clear a recovery against it was entirely right, and that no other verdict could have been properly returned. In the answer of the Pennsylvania Company, the making of the Uniform Annual Release was alleged, and that, in consideration of a reduced or lower rate exacted by the initial carrier, the glass was shipped thereunder. It is very evident, since these averments were denied by the reply, that the burden was upon the corporation to establish them by competent evidence upon the trial. This, so far as we have been able to discover from a reading of the bill of exceptions, it did not do. The execution of the Uniform and Annual Release, and the issuance of the bill of lading for the glass, containing the word "released," were proven. But there is not to be found in the record a scintilla of evidence that the glass was shipped at the lower rate of freight, or that the consignor was aware or had any knowledge of the insertion of the word "released" in the bill of lading. Unless the freight was shipped at the lower or reduced rate, there was no consideration for the release of damages.

Again, by section 5, article 1, chapter 72, of the Compiled Statutes of the state it is provided: "No notice, either expressed or implied, shall be held to limit the liabilities of any railroad company as common carriers, unless they shall make it appear that such limitation was actually brought to the knowledge of the opposite party and assented to by him or them in express terms, before such limitation shall take effect." This piece of legislation was enacted before the adoption of the present state constitution, and if it has not been repealed or modified

by section 4, article 11, of said instrument, and if a carrier may in this state limit its liability except for damages arising from its own negligence or that of its agents and servants, as contended by counsel for the unsuccessful defendant, it requires no extended argument to show that by reason of said section 5, a contract of a railroad company stipulating for the limitation of its liability will not be upheld where it does "not appear that such limitation was actually brought to the knowledge of the opposite party and assented to by him or them in express terms." In the absence of a showing to the contrary, we must assume that in the state of Pennsylvania there exists a statute similar to section 5 quoted above. See *Haggin v. Haggin*, 35 Nebr., 375; *Stark v. Olsen*, 44 Nebr., 646; *Chapman v. Brewer*, 43 Nebr., 890; *Scroggin v. McClelland*, 37 Nebr., 644; *Smith v. Mason*, 44 Nebr., 610. It, therefore, devolved upon the Pennsylvania Company to establish that the limitation clause was actually assented to by the consignor. No such evidence was adduced upon the trial; and hence there was a failure to establish that any contract was lawfully made which limited the liberty of the carrier. And without the existence of such a contract, the risk assumed was the common-law liability of a carrier. In other words, the safe delivery of the glass was insured, subject only to injuries arising from the act of God or the public enemy. Moreover, there was sufficient evidence of negligence upon which to base a recovery. The injury to the glass was established beyond controversy. It was also shown that the glass was carefully and properly packed in boxes, and properly loaded on the car; that at the time the car was delivered to the Chicago, Milwaukee & St. Paul Railway Company the boxes were out of their original position, with indications that they had been roughly used; that flat cars loaded with timbers were immediately in the rear of the one containing the glass, in the train of the Pennsylvania Company, and that the Milwaukee road, in a careful and prudent manner, carried the freight from Chicago, where

it received the same from the Pennsylvania Company, to its final place of destination. The evidence was sufficient to warrant a finding that the damages resulted from the negligence of the latter company, especially in the absence of any proof that the glass was carefully handled and transported by it. The conclusion is irresistible that the evidence sustains the verdict, and would have supported none other; and hence no prejudicial error resulted in the giving or refusing of instructions.

It is urged that the court below erred in striking out the testimony of Kennard, who was called and examined as a witness on behalf of the plaintiff. Mr. Kennard testified on direct examination that he had examined the boxes containing the glass on their arrival in Omaha, and, after giving a description of them, he was asked to state the dimensions of the glass, and the witness proceeded to answer by reading from an invoice then before him, when Mr. Corson, counsel for the Pennsylvania Company, cross-examined the witness, which questions and answers follow:

"Q. What is the invoice?

"A. It is the invoice rendered.

"Q. Whose handwriting?

"A. It is a typewriting, dictated by myself.

"Q. At what time?

"A. June 15, 1893.

"Q. Under what circumstances?

"A. The conditions were these boxes were found to be demolished, and under the instructions from the agent of the Chicago, Milwaukee & St. Paul Railway Company, I was to open those boxes and take out the glass, and make as much salvage out of it as was possible and credit that to the railroad company and charge them with the value of the glass and they would immediately take steps to have me paid for it, which they have not done."

The last answer was eliminated by the court, which is the ruling now assailed. The testimony was not proper cross-examination relative to the making of the invoice;

33

besides, the answer was not fairly responsive to the question put to the witness. Moreover, Mr. Kennard had not been interrogated upon his direct examination concerning any conversation with Mr. Preston or any one else; nor had it then been shown that the latter was the agent of the Chicago, Milwaukee & St. Paul Railway Company. The answer was also the statement of a conclusion of the witness, and was properly stricken out.

Edward F. Capron, the freight claim agent of the Chicago, Milwaukee & St. Paul Railway Company, testified on behalf of said company relative to correspondence between it and one Charles L. Cole, the general freight agent of the Pennsylvania Company, pertaining to the damages to the glass in question, and also identified several communications between the two roads relative to said matter, which were produced on the trial and introduced in evidence. From this correspondence it was disclosed that the car containing the glass, while being transported by the Pennsylvania Company, was immediately ahead, in the same train, of two flat cars loaded with long and heavy bridge timbers. Thereupon to the witness Capron was propounded, in substance, the question whether any correspondence had with the Pennsylvania Company prior to that introduced in evidence contained any statement as to what cars were loaded by it behind the one containing the glass. To which question the witness gave a negative answer. Complaint is made of the admission of the answer to said question. The evidence was preliminary in its nature; doubtless, elicited for the purpose of ascertaining whether the witness was in possession of any other letters relative to the handling of the car on which was loaded the glass, so that the same might be called for and produced as evidence. Again, the answer elicited by the question could not have prejudiced the case of the party now complaining.

On rebuttal the plaintiff was permitted to prove the value of the glass at the place of shipment, which it is

claimed is prejudicially erroneous.  The order in which evidence shall be adduced rests in the sound discretion of the trial court, and to work a reversal an abuse of discretion must be shown.  See *McCleneghan v. Reid*, 34 Nebr., 472; *Consaul v. Sheldon*, 35 Nebr., 247; *Basye v. State*, 45 Nebr., 261.  No abuse of discretion is disclosed in this matter, and the assignment relating thereto is overruled.

The assignments that the evidence does not sustain the judgment below, and that the motion of the Pennsylvania Company requesting that a verdict in its favor should have been directed, require no special attention, since they have been disposed of in the consideration of the assignments already noticed.  We have, with care, scrutinized this record, and, having failed to discover any reversible error therein, the judgment is

AFFIRMED.