ST. LOUIS, I. M. & S. RY. CO. et al. v. GREENTHAL.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1896.)

No. 727.

1. CARRIERS—KILLING OF PASSENGER BY INSANE FELLOW PASSENGER—EVIDENCE
OF INSANITY.

In a suit against a railroad company to recover for the death of a passenger
killed by an insane fellow passenger, evidence that the slayer was violently
insane, in a distant city, two or three weeks before, is competent and relevant
to the issue of his insanity at the time of the killing, and cannot be excluded
because it does not go to prove the railroad company's knowledge thereof, as
it is not necessary to prove both matters at the same time and by the same wit-
nesses.

2. SAME—RES GESTÆ—CONVERSATION OF CONDUCTOR WITH PASSENGER.

A conversation of a conductor with a passenger, who expressed fear of a
fellow passenger, as to the latter's sanity, being in discharge of the conductor's
duty to passengers, is admissible as part of the res gestæ, in an action against
the railroad company for the killing, shortly after such conversation, of another
passenger by the person whose sanity was questioned.

In Error to the Circuit Court of the United States for the Eastern
District of Arkansas.

This was an action brought by Sallie Meyer (now Sallie Green-
thal), administratrix of the estate of Isadore Meyer, deceased, against
the St. Louis, Iron Mountain & Southern Railway Company and
Pullman's Palace-Car Company, for damages for the killing of in-
testate by an insane fellow passenger on defendant's train and car.
The verdict and judgment below were for plaintiff, and the defend-
ants have brought error.

For a full statement of this cause and the legal principles involved therein,
reference is made to the opinion of this court delivered when the case was first
here. Meyer's Adm'x v. Railway Co., 10 U. S. App. 677, 4 C. C. A. 221, and 54
Fed. 116. The change in the name of the plaintiff is accounted for by her mar-
riage.

The complaint alleges, in substance, that on the 17th of February, 1891, Isadore
Meyer, of Bald Knob, in the state of Arkansas, boarded defendant's train, and took
his seat in the Pullman Palace-Car Company's car as a passenger, going south;
that a few minutes thereafter, and after the train had started south, suddenly, and
without warning, Meyer was shot and instantly killed by J. W. Graeter, a passen-
ger on the train and in the Pullman car; that Graeter was a dangerous lunatic,
and an utter stranger to Meyer, but that both defendant companies knew the dan-
gerous condition, character, and disposition of Graeter when they received him as
a passenger, and negligently allowed him to continue as a passenger on the train
in the sleeping car, without guard or protection against violence towards the passen-
gers on the train on the part of the maniac Graeter. The defendants' answer de-
nied the allegations of the complaint. Upon the second trial the plaintiff recov-
ered judgment, and the defendants sued out this writ of error.

Percy Roberts and George E. Dodge (B. S. Johnson was with them
on the brief), for plaintiffs in error.

G. B. Rose (W. M. Beckner, U. M. Rose, and W. E. Hemingway
were with him on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, de-
livered the opinion of the court.

The assignments of error relate exclusively to alleged errors grow-
ing out of the admission of testimony, and are all of the same gen-

eral character. The defendants denied that Graeter was insane, or that they knew or had any reason to believe that he was insane. To prove Graeter's insanity, the plaintiff introduced a number of witnesses, who testified, in substance, that Graeter was violently insane in Ft. Worth, Tex., about two or three weeks before he killed Meyer; that, by direction of his brother, he was taken in charge and sent to his home in Vincennes, Ind., in the care of two keepers; that he was taken north over the road of the defendant railway company in a sleeping car of the defendant the Pullman's Palace-Car Company, manacled; that he was very violent when first put on the train, and at intervals afterwards, and at times exhibited a homicidal tendency. The assignments of error relate chiefly to the admission of this testimony. The first ground of objection to its admission is that it was irrelevant and immaterial, for the reason that the question was whether Graeter was insane at the time of the killing, and that proving that he was insane three weeks before did not tend to prove him insane at that time. It is true that one of the issues to be tried was whether Graeter was insane at the time he killed Meyer, but the evidence on this issue cannot be restricted to the very hour or day of the occurrence. Such evidence may relate to his mental condition within any reasonable limit of time, either before or after the killing. On such an issue a wide latitude is allowed, and the words appearance, conduct, and personal history of the alleged lunatic, extending over a period of many years, may be shown, and even the mental condition of his ancestors may be inquired into. The rule on this subject is stated by Judge Clifford in U. S. v. Holmes, 1 Cliff. 98, Fed. Cas. No. 15,382, as follows:

"The precise question to be tried in all such cases is whether the accused was insane at the very time he committed the act, and to that point all the evidence must tend. Great difficulties surround the inquiry, and it is for that reason that the rules of law allow a wide range of testimony in the investigation. Proof of hereditary insanity is therefore admissible as affording some ground of presumption that the alleged diseased state of mind may have descended through those from whom the accused derived his existence. Evidence of acts, conduct, and declarations both before and after the time of the committing of the act tending to show an insane state of mind are also admissible as having some bearing on the point in controversy."

All the authorities are to the same effect. Green v. State, 59 Ark. 249, 27 S. W. 5; Busw. Insan. p. 249; People v. Garbutt, 17 Mich. 10.

Another objection to the introduction of this evidence was that it did not show that the defendants had any knowledge that Graeter was insane at Ft. Worth. Under the state of the pleadings, the burden was on the plaintiff to prove Graeter's insanity, and that the defendants knew that he was insane or had good grounds to believe it. The plaintiff, however, was not required to prove both these facts at the same instant or by the same witnesses. Upon the issue as to Graeter's insanity, the evidence was relative and competent.

It is insisted in the brief of counsel for the plaintiffs in error that the defendants had no knowledge that Graeter was insane or dangerous when he was received as a passenger, or afterwards, until the tragedy occurred. But this is a question of fact which was conclu-

sively settled by the verdict of the jury. The sufficiency of the evidence to warrant the verdict of the jury was not challenged in the court below by a request for a peremptory instruction, and cannot therefore be challenged in this court.

Miss Mary Wallrath was a passenger on the train, and riding in the same sleeper with Graeter. Graeter's appearance, conduct, and conversation were such as to alarm her, and she called the attention of the conductor to him, and said to the conductor, "I am afraid of that man," and thereupon a conversation ensued between the witness and the conductor in relation to Graeter's condition, in the course of which the conductor said to the witness that, about two or three weeks before, he had brought Graeter down in the car from Ft. Worth handcuffed, and that he was violently insane. This conversation occurred only a short time before Meyer was killed. The passengers in the car were under the care and protection of the conductor. If he knew or had reason to believe that Graeter was a dangerous lunatic, it was his first and highest duty to take proper action at once for the security and protection of his passengers against the violence of the insane man. Failing to discharge this first and highest duty, it was clearly his duty to communicate to the passengers the facts within his knowledge which showed or tended to show that they were riding in the car with a violently insane man, who was under no guard or restraint, to the end that they might themselves take suitable precautions for their safety. Having omitted to discharge his highest duty for the safety of his passengers, he should, at the very least, have advised them of their danger. It will be observed that the conversation was not had with one having no interest in its subject-matter. It was had while the conductor was at his post of duty, with a passenger in his charge, and entitled to his protection, who had become alarmed for her personal safety, and who was rightfully seeking information from the conductor as to what he knew about Graeter, whose appearance and conduct had put her in fear. Under these circumstances, it would have been a gross violation of his duty if the conductor had not imparted to the passenger the information he possessed concerning Graeter. If he was not going to take action himself for her protection, and he did not, it was his duty to disclose to the passenger, in answer to her appeal, all the facts within his knowledge tending to show that Graeter was a madman, and dangerous to her safety. What he then said on that subject was said in the discharge of a duty imposed upon him by his office, and is clearly a part of the res gestæ. He was acting strictly in the line of his duty, though not up to the full measure of his duty, for which he paid the penalty of his life, for he, too, was killed by Graeter.

The judgment of the circuit court is affirmed.