## NORTHERN PAC. RY. CO. v. KEMPTON.

(Circuit Court of Appeals, Ninth Circuit. May 29, 1905.)

### No. 1,072.

1. PAROL EVIDENCE—CONSTRUCTION OF CONTRACT—TIME AND MANNER OF PERFORMANCE.

Where a contract for the transportation of live stock was silent as to the time and manner of performance, parol evidence was admissible to show that it was customary to furnish an independent train for the transportation of stock amounting to 10 cars or upwards, when demanded.

2. CARRIAGE OF LIVE STOCK—ACTION FOR DELAY—INSTRUCTIONS.

In an action for damages resulting from delay in transportation of 12 cars of live stock, plaintiff testified that it was customary for the railroad to furnish independent power for the shipment of 10 cars or more, when demanded, and "we always expect it [independent power] when shipping either in or out. We collect a train load, and were entitled to a stock train. If we had ten cars or more, we generally get separate power for them." Another witness, who had been a long time in the cattle business, testified: "If we have a train load, we have power of our own. A train load is from ten cars up." *Held*, that such proof justified an instruction that the jury might consider the evidence relating to the question whether cattle being transported in a number greater than 10 car loads were or were not hauled by regular freight trains, or trains gotten up specially for the purpose of transporting them.

3. RES GESTÆ—STATEMENTS OF SERVANTS.

In an action against a carrier for delay in transporting cattle, a statement by defendant's railroad conductor, made to plaintiff, during the transportation, in response to a question, "Why don't you get over the road?" "I can't get anywhere with this dummy. They should have known better than to send it out this kind of weather"—was admissible as res gestæ.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 308.]

4. CARRIAGE OF LIVE STOCK—ACTION FOR DELAY—INSTRUCTIONS—RES IPSA LOQUITUR.

Where, in an action for injuries to cattle sustained by delay in transportation, the evidence showed that 70 hours were consumed in making a trip which ordinarily could have been covered in 36⅔ hours, it was not error for the court to charge that where defendant undertakes to transport property by means of a train which is under its management, and the accident is such as, in the ordinary course of things, does not happen if those who have the management thereof use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care, though the transportation contract provided that the carrier should not be liable for injuries to the stock unless the same were immediately caused by the misconduct or actual negligence of the carrier, its agents, servants, or employés.

5. SAME—SEPARATE DELAYS.

Where, in an action against a carrier for injuries to cattle by delay in transportation, there was evidence of several separate delays en route, and the court charged that it was plaintiff's duty to show how much of the damage, if any, sustained by the cattle was due to the causes for which defendant might be liable, and that plaintiff was not entitled to recover for damages caused by a blizzard, and could only recover such damages as resulted directly from some act or omission of the defendant which defendant should have done or omitted to do in the exercise of reasonable care, the refusal of an instruction that each of the delays must be considered by itself, and that the fact that, if the first delay had not taken place, the second might have been avoided, would not impose a

liability on defendant for the second delay, as the first would not then be the proximate cause of the second, was not error.

**6.** UNITED STATES COURTS—ENFORCEMENT OF CONTRACT AGAINST PUBLIC POL-ICY OF STATE REMOVED FROM.

Where plaintiff, a resident of Montana, contracted in Minnesota with defendant for the transportation of certain cattle from Minnesota, to destination in Montana, and thereafter brought suit in the Montana state courts for damages resulting from delay, which suit defendant removed to the federal Circuit Court sitting in Montana, such court would not en-force a stipulation in the transportation contract providing a 60-day lim-itation for an action thereon, which was void under the express provisions of Civ. Code Mont. § 2245, though it was not prohibited by the laws of Minnesota, where the contract was made.

In Error to the Circuit Court of the United States for the District of Montana.

This is an action for damages alleged to have been sustained by the plain-tiff (defendant in error) in consequence of the negligence and delay of the defendant in transporting 12 car loads of the plaintiff's cattle over its line of railroad from Winnipeg Junction, Minn., to Fallon, Mont. It is alleged that the negligent conduct of the defendant consisted in the failure to provide an independent train, with independent power, for the transportation of the plaintiff's cattle, in the negligently slow rate of speed at which the cars con-taining the cattle were hauled, and the negligent manner of starting and stopping the said cars, by reason whereof many cattle were bruised, crippled, made sick and sore, and otherwise injured, resulting in damages to the plain-tiff in the sum of $10,072. The defendant railway company denies any negli-gence on its part in transporting the cattle, and avers that the plaintiff and his agents overcrowded the cattle in loading them into the cars, and any in-jury sustained by said cattle was contributed to by the said crowding. It avers that it furnished an independent train, with independent power, as soon as demanded, and alleges, as matter of defense, that the principal delay in hauling the train containing the plaintiff's cattle was caused by the un-usually severe snowstorm and blizzard, producing conditions over which the defendant had no control. The defendant further charged that the plaintiff had no right of action upon the contract, as he had not complied with the terms thereof, in that he had not brought the action within 60 days after the alleged damage was said to have occurred, and had not given any written notice of his claim for damages to any officer or agent of the defendant before removing the said stock from the place of destination.

The plaintiff shipped 12 car loads of cattle from Winnipeg Junction, Minn., to Fallon, Mont., over defendant's line of road, under a written contract. The distance from Winnipeg Junction to Fallon is 471 miles. The train hauling the cars containing plaintiff's cattle left Winnipeg Junction May 1, 1899, at 5 p. m. It arrived at Fallon on May 4, 1899, at 3 p. m. The plaintiff testified that the usual running time for stock trains was from 15 to 25 miles an hour. At the rate of 15 miles an hour, the train should have made the distance in 36⅔ hours, including 5 consecutive hours required by section 4386 of the Revised Statutes [U. S. Comp. St. 1901, p. 2995] for rest, water, and feeding, when the transportation of cattle is for a longer period than 28 consecutive hours. The time actually consumed in transporting the cattle to their destination was 70 hours. The 12 cars containing the cattle were attached to a local freight train from Winnipeg Junction to Mandan, a distance of 226 miles, at which point the cattle were unloaded by the plain-tiff, cared for, and reloaded into the cars. The plaintiff there demanded a special, independent locomotive for the hauling of the cars, which was fur-nished, and the train proceeded independently from that point to Richardton, a distance of 86 miles, where a delay of some 11 or 12 hours occurred by reason of a severe snowstorm, and an accident to the switch which prevented the train from leaving a side track. From this point to the point of destina-tion, 159 miles, the train appears to have proceeded without difficulty, and no complaint is made as to this portion of the service. The evidence tended

138 F.—63

to show delays at several points between Fargo and Richardton, for which the defendant company was responsible. The evidence also tended to show that plaintiff shipped 582 head of cattle from Winnipeg Junction, all in good condition. When the train arrived at Mandan, the stock was in bad condition. Two had legs broken, and 9 were dragged out of the cars because they could not be got up, on account of bruises they had received on the way, from being thrown down and crippled. The next morning at Mandan 9 of the cattle were dead, and 3 others were dying. Twelve were left at Mandan. The cattle were in very bad condition on arrival at Fallon. Forty-five more were dead, 7 more died on being taken from the cars, and 54 were left at Fallon because they could not walk. Within 10 days 122 were dead, others crippled, and still others were more or less injured.

The case was tried with a jury, resulting in a verdict for the plaintiff in the sum of $3,000, and judgment was entered thereupon. To reverse this judgment a writ of error has been sued out to this court.

Wm. Wallace, Jr., and Charles Donnelly, for plaintiff in error.

Sidney Sanner and T. J. Walsh, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The defendant in error, as a witness in his own behalf, was asked by his counsel the following question:

"How, in the ordinary shipment of live stock, is it shipped and transported by railroads in this section generally—with single trains, or jointly and promiscuously with other freight?"

An objection to this question was overruled by the court, and the witness answered:

"Ten cars and upwards constitute a stock train. It is customary, when asked, to give power for ten cars or upwards to the capacity of the power, and transport it as a separate train, when demanded."

It is objected to this evidence that the shipment was made under a special contract, which was complete in itself, and was a contract simply to transport stock; that this evidence tended to show a custom making another and a different contract for the transportation of the stock by an independent train, and it is contended that this could not be done. The objection cannot be sustained. The evidence did not tend to establish a new contract, or to change or modify the terms of the written contract. The contract was silent as to time and manner of performance, and the evidence was properly introduced to inform the court and jury as to the custom prevailing with respect to the character of transportation the parties had in view when they made the contract. The contract did not say whether the cars in which the cattle were loaded were to be attached to a through freight train or to a way freight train, or whether the cars were to be hauled as an independent train. Which of these methods was the carrier to furnish? The presumption was that the parties to the contract understood that the cattle were to be transported in the way that similar freight in similar quantities was being transported, and the evidence objected to, as well as other evidence not objected to, relating to the method of transportation, was introduced for the purpose of establishing that fact, and was admissible for that purpose. Robinson v. United States,

13 Wall. 363, 20 L. Ed. 653. A custom or usage known to the shipper, as to the manner or method of transportation, will be binding as a part of the contract when not contrary to its terms. 6 Cyc. 428.

It was also objected that the court instructed the jury that it was entitled to take into consideration the evidence relating to the question whether cattle being transported in a number greater than ten car loads were or were not hauled by regular freight trains, or trains gotten up specially for the purpose of transporting such cattle. It is contended, first, that the plaintiff was only entitled to transportation as an independent train when demanded, and it is claimed that the testimony shows that when such transportation was demanded it was furnished; and, second, that the evidence was insufficient to establish a custom that 10 cars and upwards constituted a stock train. It is true, the plaintiff testified that it was "customary, when asked, to give power for ten cars or upwards to the capacity of the power, and transport it as a separate train, when demanded." This answer, standing alone, is not very clear. But he made his meaning clear in a subsequent statement. He said: "We always expect it when shipping either in or out. We collect a train load, and were entitled to a stock train. If we had ten cars or more, we generally get separate power for them." What the witness evidently meant was that, when transportation was asked for 10 car loads or upwards, it was customary to transport the shipment as a separate train. James E. Farnham, who had been in the cattle business in Montana since 1883, and for the last 12 years had shipped most of the cattle for his company, testified: "If we have a train load, we have power of our own. A train load is from ten cars up." This evidence was sufficient to justify the instructions given by the court. It also disposes of the objection that the court refused to instruct the jury that no sufficient proof had been given to establish a custom under which the plaintiff was entitled to have the cattle transported as an independent train, with independent power; and it disposes of the further objection that the court refused to instruct the jury that the plaintiff, having failed to demand an independent train with independent power from Fargo to Mandan, had waived his right thereto.

The plaintiff testified that the train stopped at Richardton; he did not know why. He asked the conductor: "Why don't you get over the road?" He said: "I can't get anywhere with this dummy. They should have known better than to send it out this kind of weather." The defendant moved to strike out this answer, because, assuming he referred to the engine or power, the conductor's statement was not admissible to bind the defendant. The motion was denied, and the defendant excepted. The question at issue in the case was whether there was any unreasonable delay in moving the train containing the cattle. The defendant was charged with negligence in attaching plaintiff's cars to a train that proceeded at a slow rate of speed and stopped at many stations. The defendant denied that it had been guilty of the negligence charged. The statement of the conductor was made in the midst of the act com-

plained of, reflecting light upon its quality and character, and under the general rule was part of the res gestæ. As said by Mr. Justice Cooley in Sisson v. Cleveland R. Co., 14 Mich. 489, 90 Am. Dec. 252:

"The statements * * * were made while the conductor was engaged in the business of the defendants in respect to the contract in question, and had control of the train, and they related to the delay complained of, which was the res gestæ of the case."

The declaration of a servant while engaged in enforcing the regulations of a steamboat company concerning passengers, with respect to which complaint was made that the regulation was being enforced with unnecessary or cruel severity, was held to constitute a part of the res gestæ. New Jersey Steamboat Co. v. Brackett, 121 U. S. 637, 649, 7 Sup. Ct. 1039, 30 L. Ed. 1049. Where a railroad employé has been injured by the movement of cars about which he was at work, statements of the conductor of the train, made almost immediately, and while the cars were moving or had just stopped, and while the injured man was bleeding from the injury at that moment received, describing his own part in bringing about the motion that effected the injury, were held to be admissible as part of the res gestæ. Peirce v. Van Dusen, 78 Fed. 693, 706, 24 C. C. A. 280 (Circuit Court of Appeals, Sixth Circuit, opinion by Mr. Justice Harlan). A conversation of a conductor with a passenger who expressed fear of a fellow passenger, as to the latter's sanity, being in discharge of the conductor's duty to the passenger, was held admissible as part of the res gestæ in an action against the railroad company for the killing, shortly after such conversation, of another passenger by the person whose sanity was questioned. St. Louis, I. M. & S. Ry. Co. v. Greenthal, 77 Fed. 150, 152, 23 C. C. A. 100 (Circuit Court of Appeals, Eighth Circuit, opinion by Judge Caldwell). These and other similar cases indicate the scope of the rule as established by the courts, under which we think the evidence was properly admitted.

The court instructed the jury that:

"Where the defendant undertakes to transport property by means of a train which is under its management or that of its servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

The defendant took an exception to this instruction, and contends that it is not a correct statement of the law applicable to this case, under the terms of the special contract. The contract provides that:

"The said company shall not be liable for the loss or death of, nor for any injuries received by, any of such stock, unless the same is immediately caused by the misconduct or the actual negligence of the said company or its agents, servants, or employés."

We are unable to discover how this provision of the contract changes any rule of evidence otherwise applicable to the case. The instruction was taken from the case of Scott v. The London & St. Catherine's Dock Co., 3 Hurlstone & Cottman, 596. The plain-

tiff in that case was injured by bags of sugar falling from a crane in which they were lowered to the ground from a warehouse by the defendant.    The court said:

"There must be reasonable evidence of negligence, but where the thing is shown to be under the management of the defendant or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

This doctrine was held to be applicable to a common carrier in the transportation of flour in Rintoul v. New York Cent. & H. R. Co. (C. C.) 17 Fed. 905, 907, and is stated to be the law in Shearman & Redfield on Negligence (5th Ed.) § 59.    We think the instruction, taken in connection with other instructions given by the court, stated correctly a rule of evidence applicable to the case.

The court refused to give the following instruction requested by the defendant:

"So, too, each of these delays must be considered by itself alone.    The fact that if the first delay had not taken place the second one might have been avoided, would not impose a liability on the defendant for the second delay, as the first delay would not be the proximate cause of the second under such circumstances."

The defendant contends that it was entitled to this instruction by reason of an allegation contained in the complaint "that had the said cars been made into an independent train and furnished with sufficient independent power out of the city of Fargo, and, if such train had proceeded with reasonable speed, it would have arrived at the town of Fallon before the snowstorm, or before it had prevailed a sufficient length of time to cause any injury to the cattle," and the evidence of the train dispatcher, drawn out on cross-examination, that, had the train left certain points on time, delays at other points would not have occurred.    It is further contended by the defendant that plaintiff's theory was that, though the delay on account of the storm was in and of itself inevitable, the defendant was responsible for its consequences, if it might not have happened but for a previous delay for which defendant was responsible, and that as this theory is in conflict with the law upon this subject as declared by the Supreme Court of the United States in Railroad Company v. Reeves, 10 Wall. 176, 189, 19 L. Ed. 909, and in St. Louis, etc., Ry. v. Commercial Ins. Co., 139 U. S. 223, 236, 11 Sup. Ct. 554, 35 L. Ed. 154, the instruction requested should therefore have been given.    It is a sufficient answer to this contention to say that, whatever may have been the theory of the plaintiff as to the liability of the defendant for a delay following a previous delay for which the defendant was responsible, the theory of the court was in accordance with the decisions of the Supreme Court, as appears from the instructions given as requested by the defendant, as follows:

"As to the blizzard and snowstorm, I instruct you that the defendant in this case is exempt from liability on account of injuries caused by freezing or by the elements, and would not be liable for any damage resulting to the cattle on account of the said storm; and you could not and ought not to award

any damages against defendant because of injuries sustained by the live stock in the said storm, or in consequence thereof.

"It is the duty of the plaintiff to show how much of the damage, if any, sustained by his cattle, was due to causes for which the defendant might be liable; and if he fails to prove by any preponderance of the evidence how much of the damage, if any, sustained by his cattle, was due to causes other than the blizzard, he would have failed in his proof in this regard, and you could not render a verdict for him.

"Only those damages resulting directly from some act or omission of the defendant, which the defendant should have done or omitted to do in the exercise of reasonable care, can be recovered. None of the damages consequent upon the blizzard can be recovered. This burden of showing the exact amount of damages due to the causes for which the plaintiff might recover, if any such causes there were, is on the plaintiff, and you can only award a sum such as you can find from a preponderance of the evidence was due to recoverable causes as distinguished from the other causes."

It is assigned as error that upon the conclusion of the evidence the court refused to instruct the jury to find for the defendant. Among the reasons urged why this instruction should have been given is a provision of the contract—

"That no suit or action to recover any damages for loss or injury to any of said stock, or for the recovery of any claim by virtue of this contract, shall be sustained by any court against said company, unless suit or action shall be commenced within sixty (60) days after the damage shall occur, and on any suit or action commenced against said company after the expiration of said sixty (60) days, the lapse of time shall be taken and deemed conclusive evidence against the validity of said claim, any statute to the contrary notwithstanding."

The damages claimed were alleged to have been sustained between May 1, and May 4, 1899. This action was originally commenced in the district court of Montana, in and for the county of Custer, on September 5, 1899, or 122 days after the damages occurred. It is claimed by the plaintiff in error (defendant in the court below) that this limitation is not forbidden by the law of Minnesota, where the contract was made, and should be enforced. The contract was to be executed partly in Minnesota and partly in North Dakota and Montana. In the last two states the limitation is void by statutory prohibition. Rev. Codes N. D., 1899, § 3925; Civ. Code Mont. § 2245. The latter Code provides:

"Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

The delivery of the cattle was to be made in Montana. The plaintiff was a citizen of Montana, and the suit was brought in Montana. The breach of the contract occurred in North Dakota and Montana. The limitation in the contract is contrary to the policy of Montana, as expressed in its law, and could not be enforced in that state. This is an exception to the general rule that a contract valid and binding in the state where made will be enforced in another state. Chicago, B. & Q. R. Co. v. Gardiner, 51 Neb. 70, 70 N. W. 508. The rule applicable to this case is: A contract valid elsewhere will not be enforced if it is condemned by positive law, or is inconsistent with the public policy of the country, the aid of

whose tribunals is invoked for the purpose of giving it effect. Union Locomotive Exp. Co. v. Erie Ry. Co., 37 N. J. Law, 23; Thompson v. Taylor (N. J. Sup.) 46 Atl. 567; The Kensington, 183 U. S. 263, 269, 22 Sup. Ct. 102, 46 L. Ed. 190. This suit was brought in the state court of the state of Montana, and by the defendant removed to the United States Circuit Court for the District of Montana. In the state court the plaintiff was entitled to the benefit of the prohibition against the stipulation or condition in the contract limiting the time within which plaintiff might enforce his rights by legal proceedings, and the defendant could not, by removing the case to the federal court on the ground that it was a citizen of another state, deprive the complainant of such a substantive right. Missouri, K. & T. Trust Co. v. Krumseig, 172 U. S. 351, 358, 19 Sup. Ct. 179, 43 L. Ed. 474. This provision of the contract did not entitle the defendant to an instruction to the jury to find in its favor. The other grounds urged for such an instruction do not appear to have any substantial grounds, and need not be discussed.

Finding no error in the record, the judgment of the Circuit Court is affirmed.